Saxton v. Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Infant—Duty of parent.*

In an action against a street railway company to recover damages for personal injuries to a boy five years old, it appeared that at the time of the accident the boy got on a step of the platform of a car standing at a crossing. The platform was entirely closed by wooden doors with glass windows in the upper panels. He took hold of a horizontal bar fastened to the woodwork of the door a few inches below the glass. He testified that after the car was in motion the motorman looked through the glass, and saw him and shook the door and caused him to fall. This testimony was denied by the motorman who testified that he did not see the boy nor shake the door. *Held*, that on the conflicting testimony, the case was for the jury.

In such a case it appeared that the boy had gone almost daily to the home of his aunt near by, and had on a few occasions gone with his cousin, a boy sixteen years old, to deliver papers in the street. His parents knew that he had done this once or twice, but did not know that he was in the habit of doing it, and on the occasion of his injury they did not know that he had left his aunt's house, or was likely to

do so. *Held*, that the father of the boy under the circumstances was not precluded from recovering because he permitted his son to go on the street in a business part of the city unattended.

*Negligence—Street railways—Improper remarks of counsel.*

In a negligence case against a street railway a judgment and verdict for the plaintiff will be reversed, where the counsel for the plaintiff in his address to the jury states, without any foundation in fact, that there had been a suppression of evidence and further says to the jury: "I ask you in money to make this company, with its earnings, and out of its earnings, out of its millions, for which it is in this business— it is not a charity, it is not a benevolence, it is a business just as hard and cold as any that can be estimated in dollars and cents—I ask you to make this company out of its millions to put on that stump a foot as good as the original. . . . It is idle for them to cry for justice. Give it to him, that is what we want and that is what we ask. Give it to him, whatever we ask, five thousand, ten thousand, fifteen or twenty thousand dollars, whatever it is make them pay it, and give them the justice they want."

Argued Nov. 1, 1907. Appeals, Nos. 95 and 96, Oct. T., 1907, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1905, No. 824, in case of B. H. Saxton, suing in his own right and as next friend of B. H. Saxton, Jr., v. Pittsburg Railways Company. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before KENNEDY, P. J.

The opinion of the Supreme Court states the facts of the case.

Verdict and judgment for B. H. Saxton, Jr., for $3,000 and for B. H. Saxton, $1,500. Defendant appealed.

*Errors assigned* were (1, 2) in submitting the case to the jury, and (3–6) in refusing to withdraw a juror and continue the case because of the remarks of counsel quoted in the opinion of the Supreme Court.

*William A. Challener*, with him *Clarence Burleigh* and *James C. Gray*, for appellant, cited as to remarks of plaintiff's counsel in addressing the jury: Wagner v. Hazle Twp., 215 Pa. 219 ; Walsh v. Wilkes-Barre, 215 Pa. 226.

*F. C. McGirr*, with him *John Marron*, for appellee.—A judgment on a verdict will not be reversed because of alleged improper and injurious remarks of counsel, where it appears that the verdict was modest in amount, and that the court instructed the jury to disregard the objectionable remarks of counsel: Moore v. Neubert, 21 Pa. Superior Ct. 144.

OPINION BY MR JUSTICE FELL, January 6, 1908:

The first two assignments of error relate to the right of the plaintiffs to recover. They cannot be sustained. The boy injured was five years and three weeks of age. While the defendant's car was standing at a crossing, he got on a step of the front platform. The platform was entirely closed by wooden doors with glass windows in the upper panels. He took hold of a horizontal bar fastened to the woodwork of the door a few inches below the glass. He testified that after the car was in motion the motorman looked through the glass and saw him and shook the door and caused him to fall. This testimony was denied by the motorman who testified that he did not see the boy or shake the door, and there was testimony that tended to show that the motorman could not have seen him because the wooden part of the door was several inches higher than the boy's head and that the boy while standing on the step was two or three feet back of the position occupied by the motorman. It was not, however, shown that it was impossible that the motorman by change of position or by leaning over could have seen, and the positive testimony of the boy that he did see him took the case to the jury on the ground of negligence in shaking the door when the boy was in a place of danger: Levin v. Traction Co., 194 Pa. 156. The father of the boy was not precluded from recovering because he permitted his son to go on the street in a business part of the city unattended. The boy had gone almost daily to the home of his aunt nearby and had on a few occasions gone with his cousin, a boy sixteen years old, to deliver papers in the street. His parents knew that he had done this once or twice, but did not know that he was in the habit of doing it, and on the occasion of his injury they did not know that he had left his aunt's house or was likely to do so.

The remaining assignments of error may be considered together. They charge misconduct of counsel in addressing the jury. The remarks objected to as being improper are: "Now this is what I charge frankly and plainly in this case a suppression of evidence, and by that I ask you twelve men to determine this case, if you have any hesitancy about the conclusion upon the evidence in the case. I ask you in money to make this company, with its earnings, and out of its earnings, out of its millions, for which it is in this business—it is not a charity, it is not a benevolence, it is a business just as hard and cold as any that can be estimated in dollars and cents—I ask you to make this company out of its millions to put on that stump a foot as good as the original. It is idle for them to cry for justice. Give it to him, that is what we want and that is what we ask. Give it to him, whatever we ask, five thousand, ten thousand, fifteen or twenty thousand dollars, whatever it is make them pay it, and give them the justice they want." These remarks were objected to at the time and were taken down by the official stenographer and by leave of court filed as a part of the record. Motions were made to withdraw a juror and continue the case. The overruling of these motions is assigned for error.

There was not the slightest foundation in the testimony nor in the circumstances connected with the case to support the statement of counsel that there had been a suppression of evidence and the jury were so instructed by the court in answer to points presented by defendant's counsel. This instruction did not cure the error of counsel. The effect of the statement on the minds of the jury is as manifest as was its purpose. The other statements were intemperate appeals to the prejudices of the jury and invitations to find a verdict on false grounds.

No verdict that may have been obtained by such means should be allowed to stand and the effective remedy is to withdraw a juror and continue the case. If courts are to continue to be places where justice is judicially administered, causes must be fairly presented and fairly defended, and the duty of counsel in this regard is not less important nor less imperative than that of the judge. A cause is not well tried unless fairly tried and a verdict obtained by incorrect statements or unfair

argument or by an appeal to passion or prejudice stands on but little higher ground than one obtained by false testimony. It is not founded on the truth of the cause. In sustaining an assignment based on improper comments of counsel, it was said in the opinion in Holden v. Railroad Co., 169 Pa. 1, that the only efficacious remedy in such a case was to withdraw a juror, and that the practice of doing so which obtained in some courts should be widely extended as an admonition to counsel. In the recent case of Wagner v. Hazle Township, 215 Pa. 219, an offer of testimony was made with the intention to bring to the attention of the jury an irrelevant fact. In reversing the judgment it was said by our Brother MESTREZAT: " When an attorney in the trial of a cause willfully and intentionally makes an offer of wholly irrelevant and incompetent evidence, or makes improper statements as to the facts in his address to the jury, clearly unsupported by any evidence, which are prejudicial and harmful to the opposite party, it is the plain duty of the trial judge, of his own motion, to act promptly and effectively by reprimanding counsel and withdrawing a juror and continuing the case at the costs of the client. In no other way can justice be administered and the rights of the injured party be protected. The imposition of the costs will remind the client that he has an attorney unfaithful to him as well as to the court. The obligation of fidelity to the court which an attorney assumes on his admission to the bar is ever thereafter with him, and when he attempts to defeat the justice of a cause by interjecting into the trial wholly foreign and irrelevant matter for the manifest purpose of misleading the jury, he fails to observe the duty required of him as an attorney and his conduct should receive the condemnation of the court. This condemnation can and should be made effective."

The judgment is reversed with a venire facias de novo.