# Brown *v.* Sunbury & Selinsgrove Electric Street Railway Company, Appellant.

*Practice, C. P.—Trial—Charge—Misstatement of evidence—Duty of counsel—Review—Appeals.*

1. Where a trial judge in the course of his charge makes a mistake in stating the evidence, it is the duty of counsel to call his attention to the mistake and give him an opportunity to correct it; but if counsel overlook the slip, or if noticing it, choose to remain silent, they cannot on appeal ask that the judgment be reversed because of the mistake.

*Practice, C. P.—Trial—Misconduct of counsel—Improper statements to jury—Withdrawal of juror.*

2. On the trial of an accident case against a street railway company the court should withdraw a juror and continue the case if requested to do so, where counsel for the plaintiff reflects on the employees of the defendant called as witnesses, as to their credibility on account of their employment, and further says, "I don't care if they call the whole line of the employees of the defendant, and of course if they had, they would have all sworn to the same thing."

Argued Oct. 29, 1909. Appeal, No. 194, Oct. T., 1909, by defendant, from judgment of C. P. Northumberland Co., Feb. T., 1909, No. 200, on verdict for plaintiff in case of William J. Brown and Ellen Brown, his wife, v. Sunbury & Selinsgrove Electric Street Railway Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before AUTEN, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for Ellen Brown for $375, and for William J. Brown for $50.00. Defendant appealed.

*Errors assigned* were for refusing to withdraw a juror, for misstating the evidence of Moyer, and in not making a fair and adequate charge.

*C. M. Clement*, with him *M. H. Taggart* and *C. F. Clement*, for appellant.

*J. Fred Schaffer*, for appellees.

Opinion by Head, J., July 20, 1910:

That the plaintiff, on the evening of her injury, was a passenger on the car of the defendant company is not denied. Nor that, at her destination point, the car stopped long enough to permit a number of other passengers to alight in safety. She alleges, however, that as she was in the act of alighting the car started with such suddenness and force as to throw her to the ground, and as a result of her fall she suffered a fracture of both of the bones of her right leg.

As to the crucial question, viz.: that her fall was caused by the movement of the car before she had safely reached the street, her case rests solely and entirely on her own testimony. The substance of the evidence of one Moyer, the only witness she called, was that when he first saw her she was in the act of falling, that she did not have hold of the car and that her feet were on the ground. The car was then moving slowly. At another place, to the question, "Was she all at the ground when you saw her?" he answered, "Not quite, no." As to the impetus which caused her to lose control of her limbs and begin the act of falling the witness could give no light. But little more can fairly be predicated of this testimony than that it was not inconsistent with the plaintiff's assertion that the car started before she had safely alighted.

In the second assignment the appellant complains of the manner in which the learned trial court, in the general charge, referred to this testimony, viz.: "A young man by the name of Moyer testifies that he saw her in the act of falling, as I recollect his testimony, and he says he could not say whether or not at the time he saw her she was free from the car; in other words, whether her hand and foot were both detached from the car. . . . And Mr. Moyer, her witness, testifies he saw her falling but could not say whether or not she still had hold of the car." In point of fact the witness had clearly stated that she had not hold of the car when he saw her.

"Q. Did she have hold of the car when you saw her?  A. No, sir, not when I seen it."

Of course, the learned trial judge was not bound to refer in detail to the testimony of this witness, but having chosen to do so, it was of the utmost importance to the defendant that the reference should be accurate, especially in view of the unusual strength of the contradiction of the plaintiff's story by all of the other witnesses in the case.  But it is clear that the mistake was a wholly inadvertent one.  The duty of counsel to aid the trial judge in such matters and give him an opportunity to correct such mistakes is manifest.  If counsel themselves overlooked the slip at the time, or if, noticing it they chose to remain silent, they cannot in fairness now ask an appellate court to reverse because of it.

The second and third assignments may be considered together.  As already stated the whole story of the plaintiff was strongly contradicted by a number of witnesses.  They testified that she had boarded the car in company with a man, not her husband, who paid her fare, sat in the seat and conversed with her and tried to persuade her to continue her journey.  Several of them declared there was evidence to ear, eye and nostril alike that she had been indulging in the use of intoxicating liquor and that she had safely and completely alighted from the car before it started.  In all of these respects the testimony offered by the plaintiff was wholly irreconcilable with that of the other witnesses.  None of this testimony was apparently shaken on cross-examination, and no direct or permissible attack was made on the character or reputation of any of these witnesses.  It is true some of them were employees of the defendant, not then, however, in charge of the car but riding as passengers.

With the evidence in this state the plaintiff's counsel was addressing the jury when the following occurred: "Mr. Shaffer, 'You know and I know that employees of corporations are brought in and catechised with reference to an accident almost immediately after it happened.'  Colonel Clement (for defendant), 'Counsel for the defendant moves the court to withdraw a juror and continue the case.'  Mr. Shaffer,

'The evidence is that this superintendent, according to his own testimony, immediately sends out his couriers and sends out this man Conrad and somebody else to interrogate this plaintiff and get an admission from her about this accident, and you can take that down too.  Gentlemen of the jury, I say to you that the evidence of Conrad, Day, Lauer and Specht is the evidence of employees of this defendant, and I say to you, you have a right to consider the fact that they are employees as to whether or not their testimony would likely be colored and made to fit into the defendant's theory of the case.  I don't care if they call the whole line of the employees of the defendant, and of course if they had they would have all sworn to the same thing.'  Colonel Clement, 'I renew my motion.'  By the court, 'The motion to withdraw a juror is overruled, and an exception for the defendant.' "

Here was a wholesale attack upon an entire class of men of whom the evidence disclosed nothing worse than that they earned their livelihood by working for a public service corporation whose business it was to daily transport in safety perhaps thousands of individuals.  It is not needful that we should, at this time, attempt to express anew the manner in which appellate courts view such an abuse of the great powers with which an advocate is invested under our system of jurisprudence.  An examination of the recent cases of Holden v. Penna. R. R. Co., 169 Pa. 1; Saxton v. Pittsburg Rys. Co., 219 Pa. 492; Freeman v. Traction Co., 36 Pa. Superior Ct. 166, will show that there is nothing left to be said on the subject.

In this case there was no notice of the matter taken by the learned trial judge, not even a caution to the jury to disregard such statements.  We have already indicated our view that this case is one of the class that peculiarly demands of the trial judge a careful and adequate presentation of the real issue; of the points of strength or weakness in the respective contentions of the parties and of those considerations from which alone the verdict should spring.

The second and third assignments are sustained.  The remaining ones are overruled.

Judgment reversed and a venire facias de novo awarded.