Fortis et vir, Appellants, *v.* Pittsburgh.

Argued October 2, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Abe R. Cohen,* with him *Benjamin B. Crone,* for appellants.

*Ernest C. Reif,* Assistant City Solicitor, with him *Wm. Alvah Stewart,* City Solicitor, and *Bennett Rodgers,* Assistant City Solicitor, for appellee.

OPINION BY MR. JUSTICE LINN, November 24, 1941:

These appeals by husband and wife are from judgment on a verdict for defendant in their suit to recover for personal injury and for repairs to their car.

While the husband, accompanied by his wife and brother-in-law, was driving during "perfect daylight,"

on the Bigelow Boulevard, a four-lane highway, in the City of Pittsburgh, one of the most important roads in the Commonwealth and part of the State highway system, his car, a Ford V-8 coach, came in contact with a large stone that appears to have rolled into the highway, at or about that time, from the adjoining hillside.

There was dispute among witnesses about the place along the boulevard at which the accident occurred; whether the city was negligent; whether the stone should have been seen in time to avoid it; whether all of the wife's injuries for which claim was made resulted from the accident. It was for the jury to find the facts. The verdict means that the city performed its duty in taking the required care to protect highway users from the danger incident to stones in the hillside getting loose and rolling into the highway.

Appellants now complain that the charge "was so inadequate and unfair that it constitutes reversible error." When the experienced trial judge concluded his instructions to the jury, he asked, "Do counsel have anything to suggest to the court?" In response, counsel for appellants made two suggestions for additional instructions. Both received adequate attention. The judge then asked, "Anything further?" No additional requests were made. Only a general exception was taken by appellants.

Appellants contend there was "failure to tell the jury what the defendant's duty was." We think the criticism is unsupported; the instruction on the subject is too long to quote here, but it cannot be held inadequate. The next criticism is that there was "failure to charge as to the possible interest of defendant's employe-witnesses." These were police officers, engineers, highway supervisors, laborers and "retired" employees. Some city employes were called by plaintiffs. In the course of a paragraph dealing with the duty of the jury to weigh the evidence, the learned trial judge said: "Consider the interest that a witness may have in the outcome of the case, or any prejudice or bias apparent to you;

whether they are telling a likely or reasonable story; their means of knowledge or of observation of the facts concerning which they testified, and any contradictions in the evidence, together with the surrounding circumstances: All for the purpose of deciding who is telling the truth." In the absence of requests for further instructions on the subject, appellants' assignment must be dismissed.

The next complaint, "failure to apply the law to the facts," is vague, supplemented in the course of the argument as follows: "In short, the learned trial court defined naked propositions of law without giving them meaning or significance in the case in which they were to be applied." That criticism is without support. This was an ordinary tort action. The issues were very simple except as to the physical injury, an issue not involved in determining the principal question whether the city had performed its duty in properly caring for the highway.

The next complaint is stated as "inclusion of instruction on contributory negligence." As the plaintiff-husband was driving the car, it was necessary to charge on the subject. The learned judge instructed the jury on the subject and, with respect to the wife-plaintiff, said: "She is only answerable for her own negligence, but if she sits by and sees a danger and lets herself be carelessly driven to her injury, then she cannot recover." Appellants suggest "that where no portion of the testimony will support a finding of contributory negligence, that issue should not be presented in great elaboration to a jury." It is unnecessary now to deal with that abstract proposition. Nothing that was said on the subject in the instructions to the jury would be ground for reversing.

The next heading in the argument is the following: "Counsel for the defendant injected into this case extraneous, unfair, and prejudicial issues which made a fair trial impossible." That is a serious charge; such conduct has been repeatedly condemned: *Saxton v.*

*Pittsburgh Rys. Co.*, 219 Pa. 492, 68 A. 1022; *Hoffman v. Berwind-White Coal Mining Co.*, 265 Pa. 476, 109 A. 234; *Stybr v. Walter*, 272 Pa. 202, 116 A. 159; *Mittleman v. Bartikowsky*, 283 Pa. 485, 129 A. 566; *Stassun v. Chapin*, 324 Pa. 125, 188 A. 111. If the complaint were supported by the record we should immediately order a new trial, but our examination of it shows that there is no basis for the charge. The brief says that "at least three specific issues, all entirely extraneous to the actual issues involved, and all highly prejudicial to the plaintiffs" were injected into the case by the defendant. The first one is treated under the heading, "man plaintiff as a 'labor spy'." During the cross-examination of the husband, he was asked a number of questions about his various occupations and the places where he had worked. We are quite certain that no juror listening to the examination would ever have guessed that the cross-examiner was attempting to create the impression, if that was his intention, that the plaintiff has been a "labor spy." A reading of the record now does not give us that impression, and, notwithstanding the suggestion* of appellants' counsel, we cannot see that the plaintiff was stigmatized in the sense suggested.

The next of these three issues is a reference to "plaintiffs' disbarred and imprisoned former counsel." The brief states that some years before this trial, it became more or less generally known in Pittsburgh, where the case was tried, that lawyers for injured plaintiffs conspired with lawyers for the city to make fraudulent

---

* Appellants' brief says: "The man plaintiff is a graduate engineer. He was detailed by his employer, the Railway Audit and Inspection Company, to various industrial plants where he was to study and make reports on plant efficiency. Yet through five long pages of cross-examination, and over the repeated objections of plaintiffs' counsel, he was interrogated by counsel for the defendant for only one purpose,—to suggest to the jury that he was a labor spy and thus to poison the minds of those jurors whose economic viewpoints made a labor spy a subject of abhorrence. Whether he was or whether he was not a labor spy is immaterial."

settlements of damage claims, and that a lawyer named Morris G. Levy was involved in the scandals, pleaded guilty to indictment, was imprisoned and disbarred. During the cross-examination of the plaintiff, he was asked, "Q. Before these papers [statement of claim] were prepared, did you discuss the case with your attorney, Morris G. Levy?" Mr. Levy's full name was mentioned in several other questions of the same character. Though the accident occurred February 29, 1936, suit was not brought until February 17, 1938, nearly two years later; and it was brought by Morris G. Levy as attorney for the plaintiffs. Before the case was tried, Mr. Levy ceased to represent plaintiffs. Other counsel, who succeeded Mr. Levy, took steps to amend the statement of claim more than four years after the accident, by claiming additional elements of damage as the results of the accident. The object of counsel for the city, in referring to the plaintiffs' instructions to their counsel Morris G. Levy, doubtless was to ascertain why the injuries declared on in the amendment, if they had resulted from the accident, were not originally included in the statement of claim prepared by Morris G. Levy. Obviously, if Mr. Levy was fully instructed by the plaintiffs and prepared the statement of claim according to their instructions, the ground would have been prepared to support an argument in behalf of the city to the effect that the injuries declared on in the amendment had not resulted from the accident in February, 1936. In addition, as we understood at the oral argument, the plaintiffs, at the trial, were represented by three lawyers, one of whom was a Mr. Levy. Defendant's counsel suggests that in the cross-examination complained of he used the full name Morris G. Levy in order to distinguish him from the Mr. Levy who was then in court on plaintiffs' behalf. In these circumstances, this complaint fails.

The third of the issues said to have been improperly injected into the trial is "plaintiff's former marriage and divorce." After she had testified that she had been mar-

ried to a Mr. Falco in New York City and had been divorced in that city in 1932, the learned trial judge suggested that unless counsel for the city proposed to show that she was not in fact divorced the examination had gone far enough. It stopped at that point. On that showing, this complaint also fails.

The last point treated in the brief is abuse of discretion in refusing the motion for a new trial. We have considered the evidence in the typewritten transcript in the light of the instructions to the jury, the opinion of the court in banc and of the arguments of appellants' counsel and can find no abuse of discretion in the action of the court in banc dismissing the motion.

Judgment affirmed.