Knight, Appellant, *v.* Allegheny County.

Argued March 31, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*John A. Metz, Jr.,* with him *Metz & Metz,* for appellants.

*John W. Mamula,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 24, 1954:

This is an appeal from the Court of Common Pleas of Allegheny County involving eminent domain proceedings. The jury returned a verdict in an amount less than that awarded by the Board of Viewers. The plaintiffs contend on appeal that the small verdict of the jury was influenced by the improper remarks of counsel for the County of Allegheny. According to the attorney for the plaintiff-appellants, the appellee's attorney, in his summation to the jury, said that the jury should return a verdict that was "fair to me and him and you." The record from this point reads:

"Mr. Sniderman: 'If the Court please, that last remark that was made by Mr. Mamula to the Jury in his

closing address, as to the taxpayers, "fair to me and him and you," is improper and prejudicial. It is an appeal to prejudice and it is irrelevant and it is likely to have a prejudicial effect on the verdict. I just want to have that remark placed in the record and the circumstances under which it has been made, and I ask for the withdrawal of a juror.'

"Mr. Mamula: 'I might state I have tried many cases with Mr. Sniderman and that this objection has been raised on one previous occasion and was disallowed as not being prejudicial, but being a mere statement of a positive fact.'

"The Court: 'I will refuse the motion to withdraw a juror. The Jury will of course recognize that the County of Allegheny is a municipal body for the benefit of everyone. I mean that is, I think, a mere statement of fact and I am certain that the Jury will not be prejudiced by that fact.'

"Exception noted.

"Mr. Mamula closes finally to the Jury."

Whatever may be said about the impropriety of Mr. Mamula's remarks to the jury, it must be conceded that he is laudably candid, for in his counter-history of the case he recalls that his remarks to the jury on the subject under discussion were more vivid than as recalled by Mr. Sniderman. Reconstructing the passage-at-arms, appellee's counsel says that he told the jury that if the plaintiffs got less than they were entitled to, this would not be fair to them, "and, similarly, if the verdict was in excess of the amount to which plaintiffs were entitled they [the jurors] would not be fair to 'me and you, Judge DREW, Mr. Sniderman, and all the other citizens and residents of Allegheny County.' "

It was, of course, generous of appellee's counsel to make the jury, the attorney of the opposing side, and all the citizens and residents of Allegheny County party-

defendants to the lawsuit, but when he included the Court itself in the litigation, his bounty was too overwhelming to be accepted in the name of the law. And that the Court should not have instantaneously declined this proferred largesse on the part of appellee's counsel, crippled, from that very moment, the neutrality of the trial beyond all hope of repair or retrieving.

A judge in a trial at nisi prius is the very fountainhead of impartiality between the contesting parties and, with the exception of the announcement of his identity at the opening of the day's session, there should be no need to refer to him by name throughout the proceedings. Appellee counsel's specific reference to "Judge DREW," added to the declaration that a certain type of verdict would affect that particular judge as a private citizen, was a trespassing of decorum and a perversion of jury argument that threw the machinery of justice hopelessly out of joint.

Appellee counsel's error was compounded when he remarked, after appellant counsel's objection, that he had done this very thing in the past and that the same opposing attorney had objected and had been overruled by an unnamed judge because appellee's counsel was merely stating a "positive fact."

The Trial Judge at this point said that the "County of Allegheny is a municipal body for the benefit of everyone," and then added "I mean that is, I think, a mere statement of fact . . ." Here he repeated practically the very same phrase of defendant's counsel, allowing the jury to believe that Mr. Mamula's statement was a statement of fact. And then the Trial Judge went on to say "that the Jury will not be prejudiced by that fact."

The very least the Court should have done here was to define a municipal corporation, pointing out that a corporation is an artificial body or entity with rights

which are wholly *separate* from those who compose it; that the life of a corporation is not limited to the longevity of those it represents, nor is its wealth or resources dependent upon its members.

It appears that the errors and improprieties did not end here. In further arguing to the jury, appellee counsel, by his own admission, said: "The County of Allegheny is not the building across the street but those of us who are residents and citizens of Allegheny County." Of course, in simple fact the County of Allegheny, the municipal corporation defendant in this lawsuit, was *not* "those of us who are residents of Allegheny County."

The Court failed also to correct this second misstatement by appellee counsel. In its charge, the Court said: "There has been some question here of who the parties are. I would like just to say to you that in this case, and in any other case you may hear, you should just regard them as parties, not as individuals, not as corporations, not as municipalities, not as authorities, or anything else like that."

This instruction added little if any light to the dispute raised by the contending attorneys. It still did not say who were the "parties." In a way, the Court's charge may have inadvertently even helped to retain (in the jury's estimation) the residents and citizens as party-defendants, the role assigned to them by appellee counsel.

Counsel are expected and in fact it is part of their functions as advocates to argue their respective contentions with zeal and fervor. They may point out inconsistencies in the testimony of the opposing side, they may challenge even the honesty of their adversary if the testimony allows such a challenge, and they may ascribe to the legal foe such motives as the evidence warrants. Such argument is part of the tradition of

trial by jury as it has come down to us through the centuries. In the very nature of things one of the contesting parties is bound to be in the wrong, and unless the respective champions of the party litigants explore every fault, expatiate on every contradiction, and condemn every defect in logic, morals or law on the other side, the jury may overlook some very important and telling piece of proof.

Of course, every right can be abused and every privilege may be misemployed. Thus, if counsel introduce into their speeches misstatements of fact and appeals not justified by the evidence, a mistrial will follow if the trespass cannot be corrected by the Court. In the recent case of *Narciso v. Mauch Chunk Township,* 369 Pa. 549, the defendant township's counsel argued that the suit there involved was not against the municipality but against its taxpayers. Plaintiff's counsel objected, whereupon counsel for the township said: "May it please the Court, the jury is permitted to take general notice that Mauch Chunk Township is a municipality and that the suit is against the residents and taxpayers of the Township."

The jury returned a verdict for the defendant, but this Court on appeal granted a new trial, saying:

". . . counsel admittedly stated that the suit in reality was against the taxpayers of the township and not against the township itself. It is plaintiff's contention that this remark was so improper and prejudicial that it was likely to appeal to the passions and prejudices of the jury that a new trial should be granted.

"It is well established that any statements by counsel, not based on evidence, which tend to influence the jury in resolving the issues before them solely by an appeal to passion and prejudice are improper and will not be countenanced. As we have stated on many oc-

casions: '. . . a verdict obtained by incorrect statements or unfair argument or by an appeal to passion or prejudice stands on but little higher ground than one obtained by false testimony': Saxton v. Pittsburg Railways Co., 219 Pa. 492, 495, 68 A. 1022; [etc.]"

Judgment reversed with a venire facias de novo.