Taylor *v.* Urban Redevelopment Authority of Pittsburgh, Appellant.
Stewart *v.* Urban Redevelopment Authority of Pittsburgh, Appellant.

Argued September 30, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Michael Hahalyak*, with him *Theodore L. Hazlett, Jr., H. L. Abrams and Richard W. Kelley*, for appellant.

*Daniel M. Berger*, with him *Morris M. Berger*, and *Berger & Berger*, for appellees.

*Leonard M. Mendelson,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 23, 1965:

The lower court, in an eminent domain condemnation case, ordered a new trial because the verdict was inadequate, due, it asserted, to certain trial errors. The plaintiffs were owners of certain property in Pittsburgh, condemned by the Urban Redevelopment Authority of Pittsburgh.*

In his charge to the jury the trial judge said: "By the same token, the obligation upon the *attorneys for the defendant is most heavy because we are doing business here with what in the background I come from is a large amount of money."* (Emphasis supplied.)

The reference to the judge's background was unfortunate. The trial judge who made this statement in no way suggests by his appearance that he is a denizen of the slums or that he was born in a log cabin. The Opinion-writer here can take judicial notice of the fact that, if anything, the trial judge's appearance, his sartorial impeccability and patrician's bearing could easily convey the impression that he was brought up in a well-to-do environment. Thus, if to this judge, the amounts discussed in the trial were "large" (in the sense of excessive) amounts of money, the jury could assume that they were being warned not to render a verdict for a "large" amount. The amounts mentioned by the trial judge shortly before his "background" reference were a maximum of $103,000 and a minimum of $66,500. If, as the jury interpreted the judge's re-

---

* The property was encumbered by a lease to the Geo. B. Stewart Company, which was awarded $2,130 by the jury verdict. Stewart also appealed on the grounds of inadequacy of the verdict, asserting, in a measure, the same reasons advanced by the Taylors for a new trial. The decision of this Court applies as well to the Stewart Company as well as to the Taylors.

marks, these amounts were "large," they could well have thought that they were being even liberal in allowing the Taylors $69,490, and the plaintiff Stewart $2,130.

In this respect it may be in order to note that a judge, in the interests of undeviating neutrality, should endeavor at all times, not to place himself in evidence as an exhibit for the purposes of exemplification, comparison, or historical background. A judge should present the facts to the jury with the clarity and distinctness of a stereopticon view, he should enlighten the jury on the law in as nontechnical language as possible, and he should allow the wisdom of his studies, and the expanse of his knowledge and experience, to pour into the jury box as impartially as the sunlight breaking through the windows, inundating the courtroom with the glow of wholesome revelation of the truth, and nothing else.

The trial judge erred also when he told the jury that the redevelopment authority, in "handling public funds" had a "very heavy obligation," because "what public officials do is always wrong and never right." With this language he was in effect saying that the Authority was being coerced by the public not to spend too much money because the public would eventually be required to pay the verdict. The suggestion that taxpayers would have to dig down into their pockets to satisfy the jury's verdict was an inappropriate one because in essence it meant that the jurors themselves would have to open their wallets to help fill the bag being handed by them to the property owners. In the first place the Redevelopment Authority was not necessarily disposing of tax funds because, in many instances, Authorities operate at a profit and there is no necessity to dip into the public till at all.

Moreover, regardless of the person or entity ultimately responsible for payment of any verdict, it is

not, on the perfectly balanced scales of justice, to be either large or small. The amount has to be just right, and, whether it be for a million dollars or for fifty cents, if that sum comports with the evidence, true justice has been attained.

. . The trial judge's remark in his charge that "what public officials do is always wrong and never right," was equally unfortunate. The public is exacting and demanding but, in the main, it does not condemn the proper expenditure of public funds for a proper cause.

And to say that "counsel for the Authority" had a "very heavy burden" was wrong. Whatever burden counsel for the Authority carried was not a subject for judicial sympathy. They were counsel of ability and experience, as the trial records show, and it was not sagacious to intimate that their backs might be broken by a heavy verdict and, therefore, the jury should spare them that spinal disaster.

The trial court acknowledged it was in error in charging as above indicated, and this was enough in itself to order a new trial. *Knight v. Allegheny County*, 377 Pa. 502; *Sullivan v. Allegheny County*, 187 Pa. Superior Ct. 370, 378; *Narciso v. Mauch Chunk Township*, 369 Pa. 549.

During the trial defendant's counsel cross-examined at length an expert witness for the plaintiffs on the circumstances surrounding the purchase of the property involved. The criterion for market value is, of course, that amount which would be reasonable where the seller is not under compulsion to sell and the buyer is not forced by desperate circumstances to buy. Here the property had been purchased from a trustee in bankruptcy. The nature of the cross-examination was such as to convey to the jury the idea that at a bankruptcy trustee sale property can be purchased cheaply and that this particular property was obtained for a song and that the owners expected in the

condemnation proceedings to reap a symphonic profit. Our reading of the cross-examination in the record convinces us that the trial judge was justified in saying: "Even though the purchase price was never mentioned in the presence of the jury, they learned all of the details with the exception of the price paid. This, in our considered opinion, unduly prejudiced the plaintiffs Taylor." (*Ward v. Commonwealth*, 390 Pa. 526.)

The tenants on the property made some improvements of a permanent character. Defendant's counsel, in cross-examination, endeavored to show that the owners would not be entitled to the value of these improvements. The plaintiffs' attorney objected: "Plaintiffs Taylor object to the introduction of testimony as to the condition of the building prior to the taking, that any testimony as to what the tenant did in the premises is immaterial, that the tenant is entitled to honest value based upon a rental, a fair rental value of the premises at the time of the taking, regardless of who put the improvements in, and that any testimony to the effect of the improvements or how they were made or by who they were made is immaterial."

The trial court improperly overruled this objection and correctly assigned this incorrect ruling as another reason for granting a new trial. (29A C.J.S. Eminent Domain, §172(2); *United States v. Five Parcels of Land*, 180 F. 2d 75 (5th Cir.).)

Order affirmed.

Mr. Chief Justice BELL, Mr. Justice JONES, Mr. Justice COHEN and Mr. Justice ROBERTS concur in the result.