## Stempel v. Bucks County

*Robert W. Valimont*, for condemnee.
*Charles J. Conturso*, for condemnor.

BODLEY, *J.*, July 14, 1975—In this eminent domain case cross appeals were filed from the board of view's award of $30,000. During the trial before the undersigned and a jury, the condemnee's appraiser fixed the loss at $35,000, whereas the appraiser for the condemnor opined that it was $21,000. The usual "battle of the experts" was on. The jury rendered a verdict in the sum of $26,700, thus resolving the problem created by the not unexpected great disparity in the competing experts' opinions of values and damages suffered. The dissatisfied condemnee has filed a motion for a new trial which we here consider following argument before a court en banc.

Two reasons were advanced by the condemnee in support of his motion. While finding no merit in one, we suspect the other is of such sufficient significance as to warrant the action we take, and may be necessary in order to remove all hint of possible prejudice which may have crept into the jury's

mind as a result of three, perhaps poorly chosen, words uttered by the trial judge in the course of what we consider to be an otherwise adequate charge to the jury. While it is hoped that the use of the three words in question might charitably be considered an inadvertence on the part of the trial judge—which of course it was—their inclusion in the charge may be, we must conclude, improper under the existing case law.

Because our conclusion differs from that reached by one of our sister courts in a case involving the use of similar words (Taylor v. Washington County, 20 Wash. 24 (1938)), and because the words used were far less noxious than those to be found in certain other cases cited by the condemnee (e.g., Taylor v. Urban Redevelopment Authority of Pittsburgh, 419 Pa. 430 (1965); Sullivan v. Allegheny County, 187 Pa. Superior Ct. 370 (1958)), we believe it appropriate to recite hereunder the few paragraphs which have led us to agree that a new trial should be had.

After advising the jurors of the guiding principles to be followed in their effort to arrive at the theoretical goal of "just compensation", the trial judge stated:

"I say to you it is the duty of the jury to find a sum which is in the form of just compensation. Bear in mind that we are thinking of just compensation, and this is the payment that you are awarding Mr. Stempel.

"You are not finding a sum which will be a reward, or which will punish the County for having taken the land. This is not proper. You are looking for real value, the fair market value only, as I indicated before.

"It should be just and fair to Mr. Stempel. Obvi-

ously, this is his day in court. In other words, he will not be able to come back tomorrow if you do not come forward with a fair verdict for him. This is his day in court; therefore, it is essential that you carefully deliberate and come to your conclusion as to what is fair for Mr. Stempel to receive under all the circumstances.

"You must be fair to the County, to the *taxpayer* because, after all, these are *tax dollars*. It does not particularly matter, but the funds are being paid for something the County is entitled to. So, you have to be fair, and that means to be objective. You have to favor neither the one nor the other side, except insofar as the weight of the evidence, the preponderance of the evidence, convinces you one way or the other, and this is according to the way you view the testimony of the respective appraisers" (emphasis supplied).

It will be noted that the words "taxpayer" and "tax dollars" were used. The trial judge thus put into words that which all but the most naive among the jurors already knew—the self-evident fact that payment of damages would come from the county, and its only source of revenue—taxes. But we have been told that it is improper to so inform the jury, since it cannot be ascertained just what impact such words might have upon their minds—that some element of prejudice to the condemnee may thus be injected into the case. Most certainly, as the above-quoted words in the charge reveal, this was not the speaker's intention. Yet we must acknowledge that the source of payment is not a relevant consideration.

We think that reference to "taxes" and "tax dollars" could not have been detrimental to the *condemnor*, but we do not know. Perhaps it works the

other way around in this age in which most people talk (and, therefore, must think) of grants from government as "free" money to be sought and spent freely. Perhaps the use of the words were thus prejudicial to the county—to be complained of had the award been higher. Did the reference to the source of payment prejudice the condemnee? Did it lead the jury to revise downward the amount which might otherwise have been awarded the condemnee? Again, we do not know. The writer doubts it. But we must accept the learned conclusions reached by our appellate courts and give this condemnee another bite of the apple. It appears that any suggestion or implication, however innocently made by either the condemnor's counsel or the trial judge, that the taxpayer must shoulder the burden of the verdict, has been held to give rise to the possibility of prejudice to the condemnee. See Narcisco v. Mauch Chunk Township, 369 Pa. 549 (1952); Redevelopment Authority of Philadelphia v. United Novelty and Premium Co., Inc., 11 Pa. Commonwealth Ct. 216 (1973). See also Fidelity-Philadelphia Trust Co. v. Pennsylvania Department of Highways, 13 Bucks 603 (1964). We therefore arrive at a conclusion different from that reached by the Washington County Court in Taylor v. County of Washington, supra, and grant a new trial.

Not too long ago it was said: " 'A [litigant] is entitled to a fair trial—but not a perfect one.' ": Bruton v. U.S., 391 U.S. 123, 135 (1968), quoting from Lutwak v. U.S., 344 U.S. 604, 619 (1952). See also Commonwealth v. Beach, 445 Pa. 257, 260-61 (1971), wherein these words expressed in Commonwealth v. Fugmann, 330 Pa. 4, 18 (1938), were cited with approval: "To grant new trials whenever

such a thing [irrelevant and allegedly prejudicial testimony] occurred would mean an interminable and intolerable succession of new trials." But since this philosophy appears to be applied on an ad hoc case by case basis, our conservative conclusion is reached. And whether finality of litigation is thus more quickly attained, we can only speculate.

Accordingly, we enter the following

### ORDER

And now, July 14, 1975, plaintiff's motion for a new trial is granted.