Linda YOUNG and Steve Fattman, as Co–Guardians of Christina Young, and Linda A. Young, in her own right, Appellants,

v.

WASHINGTON HOSPITAL, Malay C. Sheth, M.D., and Kevin Snydersmith, M.D., Appellees.

Superior Court of Pennsylvania.

Argued Feb. 2, 2000.
Filed Sept. 19, 2000.
Reargument Denied Nov. 20, 2000.

Rolf L. Patberg, Pittsburgh, for appellants.

William D. Phillips, Washington, for Sheth, appellee.

Mary D. Korsmeyer, Washington, for Washington Hosp., appellee.

BEFORE: DEL SOLE, EAKIN and TODD, JJ.

TODD, J.:

¶ 1 In this medical malpractice action, Linda Young and Steve Fattman (as co-guardians of Christina Young, and Linda Young in her own right) appeal from the judgments entered in favor of Washington Hospital, Malay C. Sheth, M.D., and Kevin Snydersmith, M.D. Because of the highly prejudicial comments made by defense counsel in his opening statement and the erroneous introduction of evidence improperly suggesting contributory negligence of the Appellants as parents of a minor plaintiff, we reverse and remand for a new trial.

¶ 2 The jury trial of this matter took place in December 1998 before the Honorable David L. Gilmore.

¶ 3 The trial court concisely stated the factual background of this case:

This medical negligence case arises from the birth of Christina Young at The Washington Hospital, February 12, 1995. At trial, the Plaintiffs alleged the Defendant-physicians negligently failed to perform a Caesarean section during Christina's birth, resulting in shoulder dystocia. Additionally, the Plaintiffs averred that once the Defendant-physicians recognized the occurrence of shoulder dystocia, they negligently failed to remedy the condition, specifically through the improper application of fundal pressure. As a result of the Defendants['] alleged negligence, Christina suffered a permanent brachial plexus injury, which limits her ability to have full use of her arm.

(Trial Court Opinion, 6/11/99, at 1–2 (footnote omitted).)

¶ 4 The jury returned a verdict in favor of the physicians and the hospital. The trial court denied post-trial motions seeking a new trial and, alternatively, a judgment notwithstanding the verdict on a

number of grounds. Judgment was duly entered on the docket and this timely appeal followed.

¶ 5 Appellants raise the following issues:[1]

I. Whether the improper introduction of alleged contributory negligence by the parents of a minor Plaintiff was prejudicial when accompanied by inaccurate and highly prejudicial statements by defense counsel concerning said negligence.

II. Whether a minor is entitled to a new trial based upon the Court's refusal to instruct the jury that any funds recovered would be placed in trust when the parents' desire for monetary gain is in question.

III. Whether the plaintiffs are entitled to a new trial based upon the continual reference to a non-testifying expert.

IV. Whether the plaintiffs are entitled to a new trial because the verdict was against the weight of the evidence where all evidence, with the exception of the Defendant–Physicians' testimony, was that there was a deviation in the standard of care.

V. Whether the plaintiffs are entitled to a new trial based upon error in the permitted standard of care testimony by a defendant physician where the Defendant–Physician failed to file an expert report.

¶ 6 Our review of a trial court's decision to grant or deny a new trial is deferential: "the power to grant or deny a new trial lies inherently with the trial court, and we will not reverse its decision absent a clear abuse of discretion or error of law which controlled the outcome of the case." *Tudor Ins. Co. v. Township of Stowe*, 697 A.2d 1010, 1012 (Pa.Super.1997).

¶ 7 Appellants first contend they were prejudiced by improper argument and improperly admitted evidence alleging that they failed to follow up with appropriate medical care of the child—specifically, surgery to correct Christina's condition. Appellants filed a motion *in limine* seeking to bar attempts to characterize them as being at fault for the child's continued injured status, based on allegations of missed doctors' appointments and their decision that the child not undergo subsequent surgery, and generally seeking to bar evidence asserting their contributory negligence. Although the trial court later reversed itself, it initially ruled that evidence in this regard was "generally relevant."[2] (N.T., 12/7/98, at 16.)

¶ 8 We first review comments made by defense counsel in his opening statements which Appellants assert were highly prejudicial.[3] It is improper for counsel to present facts to the jury which are not in evidence and which are prejudicial to the opposing party; counsel may not comment on evidence to the effect that it removes an issue of credibility from the jury. *Derry Township School Dist. v. Suburban Roofing Co.*, 102 Pa.Cmwlth. 54, 61–63, 517 A.2d 225, 229 (1986). Further,

---

**1.** We have paraphrased Appellants' Statement of Issues.

**2.** As we discuss below, the court, in its charge to the jury, ultimately instructed the jury that any alleged negligence of the parents could not be imputed to the child and that the jury should not consider the parents' actions in determining damages.

**3.** In their brief, Appellants complain of other purportedly prejudicial statements made during trial and closing arguments, but fail to elaborate or develop their argument regarding these statements. They fail to specifically identify them by reference to the record, and fail to cite any authority to support their contention that such statements are improper. As such, we will not consider the merits of this argument. *See Borough of Mifflinburg v. Heim*, 705 A.2d 456, 467–68 (Pa.Super.1997). The trial court also found these statements waived for lack of a timely objection. (Trial Court Opinion, 6/11/99, at 7–8.)

[w]hether remarks by counsel warrant a new trial requires a determination based upon an assessment of the circumstances under which the statements were made and the precaution taken by the court and counsel to prevent such remarks from having a prejudicial effect. It is the duty of the trial judge to take affirmative steps to attempt to cure harm, once an offensive remark has been objected to. However, there are certain instances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint.

*Siegal v. Stefanyszyn*, 718 A.2d 1274, 1277 (Pa.Super.1998) (citations omitted), *appeal denied*, 559 Pa. 693, 739 A.2d 1059 (1999).

¶ 9 In his opening, trial counsel for Dr. Sheth emphasized Appellants' failure to allow corrective surgery for the child as an illustration of their alleged contributory negligence and emphasized that the parents wished to consult with their lawyer before making a decision about the surgery:

> And the surgery was scheduled and then canceled because she had a fever. Then it was scheduled another time, they set it up and the mother canceled it. *And in [Dr. Adelson's] records it says that the people told him that among other things they wanted to talk to their lawyer. Now, you think about that. What's going on here? What's important here, this baby or a lawsuit? What do they seem to see this baby as, truly a person, or maybe a source of some money?* I don't know, but that's in this record. Now, I might get criticized for that before we're done, but I think you want to know that because we're all going to get into position here before

this is over of everybody standing up for their own responsibility. If you find out, if you conclude that this baby would have been, according to her treating physician, that the things they're going to complain about would have been alleviated had they followed his advice, and they didn't do it and they consulted their lawyer, what do you think about that? ... They're coming in here asking you for money, yet you're going to find out that much of the stuff that they're asking you money for could have been alleviated, but they didn't do it. *And you're going to say, they talk to their lawyer?*

(N.T., 12/7/98 at 36–37 (emphasis added).) [4]

¶ 10 The implication of defense counsel's comments was unmistakable and, we find, highly prejudicial. The comments implied that the parents brought this lawsuit for financial gain, rather than to benefit the welfare of their child. There is little, in our view, more prejudicial or inflammatory than suggesting that plaintiff-parents have sued on behalf of their injured child for their own financial gain. This is the most offensive kind of insinuation.

¶ 11 Also, these statements were seriously misleading, as Rule 2039 of the Pennsylvania Rules of Civil Procedure requires that any award to a minor be held in trust until the child attains majority and, therefore, is not readily accessible to the parents. That the jury was never instructed as to the requirements of Rule 2039 only served to highlight a picture of parents motivated first by financial considerations. Appellants' proposed jury charge along these lines was rejected by the trial court. While we agree with the trial court that Appellants' proposed charge technically was inaccurate and therefore properly was rejected as stated [5],

---

4. Appellants' counsel next gave his opening statement, after which he renewed his motion *in limine* with respect to allegations Appellants were contributorily negligent.

5. In their second issue on appeal, Appellants assert that they are entitled to a new trial based upon the trial court's refusal of their

proposed charge. The proposed charge stated:

> The present action is being brought by Linda Young and Steve Fattman in their capacity as parents and legal guardians of Christina Fattman, their child. Any damages awarded under this action will be placed in trust for use by Christina Fattman

the void only exacerbated the prejudice resulting from the improper statements.

¶ 12 We find these statements highly prejudicial and in this regard note the longstanding admonition of our Supreme Court:

> It is well established that any statements by counsel, not based on evidence, which tend to influence the jury in resolving the issues before them solely by an appeal to passion and prejudice is improper and will not be countenanced. As we have stated on many occasions: "... a verdict obtained by incorrect statements or unfair argument or by an appeal to passion or prejudice stands on but little higher ground than one obtained by false testimony."

*Narciso v. Mauch Chunk Twp.*, 369 Pa. 549, 551, 87 A.2d 233, 234 (1952) (quoting *Saxton v. Pittsburg Railways Co.*, 219 Pa. 492, 495–96, 68 A. 1022, 1023 (1908)).

¶ 13 Appellants also challenge as prejudicial the introduction of evidence asserting their contributory negligence. Dr. David Adelson, a pediatric neurosurgeon who specializes in brachial plexus and peripheral nerve injuries, was one of the child's treating physicians. At trial, he testified that he recommended surgery for the child because he had become concerned about her lack of functional improvement. He stated that he had discussed the surgery with Appellants, including his expectation that surgery would return some function to her arm. Dr. Adelson further testified that he told them that in his opinion the expected benefits of the surgery outweighed its risks. He also testified that he had discussed the surgery with Appellants' attorney, at their request, and stated that although surgery had been scheduled, Appellants ultimately cancelled the surgery.

¶ 14 Linda Young, the child's mother, testified on cross-examination that when they were discussing the surgery with Dr. Adelson, they told him that they wanted to talk to their lawyer, in addition to consulting with therapists at United Cerebral Palsy. Young testified that the lawyer did not tell them not to have the surgery, and that she and the baby's father made that decision themselves. Appellants' counsel did not object to this line of questioning and indicated they would waive privilege for the limited purpose of refuting counsel's earlier comments. For their part, Appellants also presented evidence suggesting they chose a conservative approach to the child's treatment and indeed, kept most of the child's doctor and therapist appointments.

■ ¶ 15 Appellants argue that the allegations of contributory negligence are unsupported by the record and that their conduct, subsequent to Appellees' negligence, was not a proximate or superseding cause of the child's injury. Appellants emphasize that the parents and the child are separate and distinct persons in the eyes of the law. We agree that this latter point

only when she turns eighteen (18) years of age. (Plaintiffs' Points For Charge, 12/4/98, Point For Charge No. 1.) Appellants sought this instruction in light of counsel's statement that the parents' treatment decisions were driven by financial motivations. We agree with Appellants that the instruction was important to make the jury understand that the parents would not have free access to funds recovered by the child. However, the trial court refused the point for charge because it did not accurately state the applicable law—specifically, that "[t]he Point for Charge fails to contemplate the fact that, upon a showing of necessity by Christina's parents acting as legal guardians, a trustee would be authorized to distribute funds for the child's health, maintenance, necessities, etc." (Trial Court Opinion, 6/11/99, at 9.) This is a correct assessment of the proposed point's inadequacies: it is incomplete and, as drawn, could be misleading to the jury. As a result, we conclude that the trial court properly refused the charge as proffered. *See Schneider v. Lindenmuth–Cline Agency, Inc.*, 423 Pa.Super. 73, 78–82, 620 A.2d 505, 508–09 (1993) (trial court may properly refuse a point for charge which necessitates qualification or modification).

is dispositive.[6] As this action was brought by the parents on behalf of the child, the actions of the parents—their asserted contributory negligence or failure to mitigate damages—is irrelevant. Therefore, this evidence improperly was admitted for the purpose of showing the parents' negligence or failure to mitigate. The introduction of this evidence, combined with the prior statements, resulted in severe prejudice to Appellants.

¶ 16 While the trial court ultimately agreed that the evidence of the parents' actions improperly was admitted, as shown below in its corrective instruction, Appellants contend that the court's instruction was inadequate to remedy the highly prejudicial nature of the allegations. We agree.

¶ 17 The trial court gave the following instruction: .

I'm going to give you one word of caution when considering damages. You will recall that there was some testimony and some argument by the attorneys in the case about the failure to follow up some care by the parents after this and whether or not they should have had further surgical procedures. At the beginning of the case—first, let me explain that in any case the law requires that a Plaintiff use reasonable efforts to mitigate damages. In other words, if you've been injured, you can't do things then that will increase your injuries or increase the amount of medical bills or lost earnings. The law requires you to mitigate; that is, to keep your damages reasonable. However, after further considerations, I've determined in this case that since the minor Plaintiff was incapable of making any of those decisions, that any actions by the parents cannot be attributable to her. So I don't want you to consider any actions taken by the parents following this delivery as to whether or not they properly saw to her medical treatment or that they should have taken further surgical procedures as any diminution of any damages you think are properly awardable in the case.

(N.T., 12/15/98, at 876–77.)

¶ 18 The effect of prejudicial argument and evidence may be alleviated by corrective instructions to the jury. However, the instruction here was directed solely to the issue of mitigation of damages and said nothing about the prejudicial comments. Thus, in that regard, the instruction "was not directed toward [the] damage done." *Siegal v. Stefanyszyn*, 718 A.2d 1274, 1277 (Pa.Super.1998). Further, while it directed the jury to disregard the evidence of the parents' conduct, we agree with Appellants that "the issue of the inappropriate conduct of the parents and the outrageous conduct of counsel are inextricably intertwined." (Appellants' Brief at 24.)

¶ 19 This case has similarities to *Siegal*, wherein this Court ordered a new trial in a medical malpractice case after defense counsel implied in closing arguments that the plaintiffs failed to call an expert witness because his testimony would be unfavorable when, in fact, the opposite was true, and jury instructions failed to correct the misimpression. *Id.* Indeed, we believe this case presents one of those instances "where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint." *Id.*

¶ 20 Likewise, in *Boscia v. Massaro*, 365 Pa.Super. 271, 529 A.2d 504 (1987), this Court concluded that a new trial was warranted in a negligence action where the defendant's counsel repeatedly elicited testimony that the plaintiff had workmen's compensation coverage. There, we noted that "improperly admitted evidence may be so prejudicial that a new trial is re-

---

**6.** Minors under the age of seven conclusively are presumed to be incapable of negligence. *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957). This presumption persists whether the minor is a plaintiff or defendant. *Berman by Berman v. Philadelphia Bd. of Educ.*, 310 Pa.Super. 153, 159–61, 456 A.2d 545, 549 (1983).

quired." *Id.* at 507. While great deference is given to a jury's verdict, we further noted that:

> the trust our system places in the jury's wisdom is not unchecked. The rules of evidence have been arduously developed over hundreds of years in order to provide such a check. These rules prevent jurors from considering facts which might inflame their prejudices but which are irrelevant to the actual case before them. A skillful and zealous advocate is often able to sidestep the technical letter of the rules and enter some evidence which should have been excluded. When such maneuvering threatens the overall fairness of the proceeding, the trial judge should order a new trial.

*Id.* at 508.

¶ 21 The trial court acknowledged that counsel's comments regarding financial motivations "may be considered unjustified and improper," but also commented that, in its opinion, such statements "were not so inflammable and prejudicial to the jury so as to malign the fairness of the proceedings." (Trial Court Opinion, 6/11/99, at 7.) Given the highly prejudicial nature of the comments, together with the erroneously admitted evidence concerning the parents' alleged negligence or failure to mitigate, we cannot accept the learned trial court's assessment and find that it was an abuse of discretion not to grant a new trial under these circumstances.

¶ 22 In addition, we are not persuaded by the trial court's conclusion that because the jury concluded that the defendants were not negligent, and therefore did not deliberate on damages, the argument and evidence which ostensibly concerned Appellants' failure to mitigate damages was not prejudicial. (Trial Court Opinion, 6/11/99, at 5.) This ignores the possibility that a jury's conclusions regarding damages may be entangled with its conclusions on negligence. *See, e.g., Trump v. Capek,*

267 Pa.Super. 355, 358–59, 406 A.2d 1079, 1081 (1979) (noting that jury may have "felt comfortable in resolving the question of negligence against" plaintiff where fact that plaintiff's damages may have been partially compensated for by a government pension plan was erroneously introduced into evidence).

■ ¶ 23 One final observation regarding the comments of defense counsel highlighted here and their misleading nature is in order. Counsel insinuated that the parents' contact with their attorney in the course of deciding about corrective medical treatment for their child indicated improper motives and misplaced priorities on their part. However, most experienced attorneys, yet probably few jurors, realize that clients at times consult their attorneys for more than legal advice. Indeed, it is not uncommon for clients to look to their attorney for advice in much broader areas of life, be it financial, emotional, or otherwise, and may view their attorney, rightly or wrongly, as the most experienced or knowledgeable advisor they know. That they contact their lawyer when making important decisions does not necessarily mean that they are motivated by improper considerations, and to suggest so before a jury is, in our view, improper.

¶ 24 For the reasons stated above, we find that the trial court abused its discretion in failing to grant Appellants a new trial.[7]

¶ 25 Judgment reversed and matter remanded for a new trial consistent with this Opinion. Jurisdiction relinquished.

¶ 26 EAKIN, J. files a Dissenting Opinion.

EAKIN, J., dissenting:

¶ 1 The trial court acknowledged counsel's comments regarding financial motivations "may be considered unjustified and

---

**7.** Given our resolution of this issue, we need not examine Appellants' remaining contentions on appeal.

improper," but also commented that, in its opinion, such statements "were not so inflammable and prejudicial to the jury so as to malign the fairness of the proceedings." Trial Court Opinion, 6/11/99, at 7. I cannot find enough of record to overturn this first-hand determination. While the remarks and evidence concerning the parents' conduct could be deemed unjustified and improper, and certainly should not be imputed to the child, I have considered carefully the trial court's curative instruction and conclude it was adequate to remove any prejudicial effect on the jury. The instruction specifically and emphatically directed the jury to disregard such evidence, and I would therefore affirm the learned trial court.