Pati–Ann SCHWEIKERT, Appellant,

v.

ST. LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA, T/A/D/A, St. Luke's Hospital–Allentown Campus, Appellee.

Superior Court of Pennsylvania.

Argued June 14, 2005.
Filed Oct. 25, 2005.

John J. Speicher, Wyomissing, for appellant.

James W. Gicking, Philadelphia, for appellee.

BEFORE: MUSMANNO, MONTEMURO * and KELLY, JJ.

OPINION BY MONTEMURO, J.:

¶ 1 This is an appeal from a judgment for the defense in an action based on claims of medical malpractice.

¶ 2 On January 10, 1999, Appellant presented in the emergency room of Appellee hospital with severe abdominal pain and vomiting. She was diagnosed with acute calculous cholecystitis and necrotizing pancreatitis, life threatening conditions requiring immediate surgical intervention. Two procedures were performed, one on January 10, and another on January 12, resulting in the removal of her gall bladder, and surgical debridement of gangrenous sections of her pancreas. In both procedures the external portion of the incision was packed with dressing material and left open after the closing of the fascia to promote healing from the inside out.

¶ 3 Appellant was discharged from the hospital on January 27 to the care of visiting nurses who cleaned and redressed the wound on a daily basis, with follow-up office visits to the surgeon.[1] On March 12, Appellant underwent another procedure to remove a catheter and an abdominal drain.

¶ 4 Appellant continued to experience discomfort from a portion of the wound which failed to heal, and on February 2, 2000, a small piece of sponge and a metal clip were removed from the surgical site, following which Appellant instituted suit against the surgeon and the hospital. This action was consolidated with a later action against the Visiting Nurse Association.

¶ 5 The timely expert report submitted by Appellant in April of 2002 explained the presence of the sponge as follows:

> Although it is difficult to state exactly when the material (i.e. sponge) was left inside the patient's abdominal cavity, this most likely occurred during the surgical operations (procedures) in January or March of 1999.

> It is also possible that during wound care of her infected abdominal wound in 1999 by the visiting nurses, foreign material (i.e. sponges) could have been pushed into the abdominal wound and/or cavity by the visiting nurses.

(Report of Eric Munoz, M.D., M.B.A., F.A.C.S., 4/29/02, at 6). In a second report submitted in April of 2004, the expert addressed Appellee's policies regarding sponge counts.

¶ 6 In his July 6, 2004, trial deposition, however, Appellant's expert added a third possible occasion on which the foreign material could have been introduced, that is, during her post operative hospitalization, from January 10 to January 27, 1999. Because neither Appellant's pleadings nor her expert's reports identified this theory of liability, the court precluded its presentation to the jury. On July 14, 2004, the jury entered a verdict for the defense and this appeal followed.

---

* Retired Justice assigned to Superior Court.

1. The Visiting Nurse Association and the surgeon settled with Appellant prior to trial.

¶ 7 Appellant seeks relief in the form of a new trial. Our Court will not reverse the trial court's grant or denial of new trial unless the decision presents a gross abuse of discretion or an error of law. *Mitchell v. Gravely International, Inc.*, 698 A.2d 618, 619 (Pa.Super.1987). The trial court is required to grant a new trial only where a jury verdict is "against the clear weight of the evidence or [where] the judicial process has effected a serious injustice." *Austin v. Ridge*, 435 Pa. 1, 255 A.2d 123, 124 (1969) (citation omitted).

¶ 8 Appellant's first assignment of error [2] concerns the theory advanced by the expert that the sponge could have been introduced into her abdomen during post operative hospitalization. As noted, this theory was advanced by the expert in a deposition taken a week before trial and well after the statute of limitations had run. The trial court found that because the proposed testimony deviated from the pleadings, it should be precluded under the discovery rules, the violation of which can be sanctioned under Pa.R.C.P. 4019(c)(2). The imposition of such sanctions is vested in the sound discretion of the trial court which we will not disturb absent an abuse of that discretion. *Luszczynski v. Bradley*, 729 A.2d 83, 87 (Pa.Super.1999).

¶ 9 Pa.R.C.P. 4003.5(c) provides in pertinent part that:

> To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings . . . the direct testimony of the expert at trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the . . . separate report, or the supplement thereto.

¶ 10 "The question of whether the permissible limits of testimony under the Rule [would be] violated [by introduction of certain testimony] is to be determined on a case by case basis, and the essence of the inquiry is fairness. The fairness of the court's decision is gauged by whether the opposing party has sufficient notice of the expert's opinion to fashion a meaningful defense." *Burton–Lister v. Siegel, et al.*, 798 A.2d 231, 241 (Pa.Super.2002), *appeal denied*, 570 Pa. 681, 808 A.2d 568 (2002) (citations omitted). A fully realized defense includes the presentation of an expert witness to rebut the evidence offered by the opposing party. *Id.* at 242.

¶ 11 Appellant argues that the trial court ignored the "fair scope" test for the expert's reports and/or that the language of her amended complaint subsumed the idea of negligent post operative care to account for the presence of the sponge. As to the first premise, Appellant would have us find the following language of the expert's report all encompassing:

> Under no scenario can a physician or nurse be "excused" for leaving a sponge in a patient's abdominal wall or cavity and/or not finding (or discovering) a sponge after it has been left inside of a patient causing an infection.

(Report of Dr. Munoz, *supra* at 7).

¶ 12 Appellant posits the notion that because the expert's (first) report discusses post operative wound care by visiting nurses, a suggestion that hospital nurses were responsible for introduction of the sponge could be extrapolated from the quoted passage, and would, therefore, come as no surprise. In so arguing she relies on this Court's opinion in *Bainhauer v. Lehigh Valley Hospital*, 834 A.2d 1146 (Pa.Su-

---

**2.** Appellant has ostensibly presented five issues for our review of which the first three challenge the factual basis of the trial court's decision to preclude the expert's testimony on the new/third theory. We will address these together.

per.2003), *appeal denied*, 580 Pa. 693, 860 A.2d 121 (2004).

¶ 13 In that case we reversed the trial court's order precluding the introduction of expert opinion testimony that the administration of a certain drug to the hypertensive appellant as he underwent a severe and sustained drop in blood pressure during surgery was a departure from the standard of care. We concluded that the appellant's expert had in fact given notice in his report that administration of this medication at the crucial time was contraindicated as it contributed to the dangerous drop in the appellant's blood pressure. Specifically, we noted that the particular substance had appeared in a list of drugs which, alone or in combination with others, were integral to the malpractice claim. Thus, although the expert did not include this specific medication in his theory of negligence, its existence, its effects, and the result of the appellees' failure to take remedial action had been well known and fully explained from the outset. That is not the situation here.

¶ 14 We are unconvinced that the expert's very general assertion of unacceptable practice quoted above gives notice via specific facts or otherwise that post operative negligence is being alleged, especially in view of the particularity of the expert's other, original theories of negligence. In his report, the expert expressly identified two possible time frames within which the introduction of the sponge might have occurred: during the surgical procedures of February or March of 1999, and during the ministrations of the visiting nurses after Appellant's release from the hospital. No events during post surgical hospitalization are ever mentioned, and neither the general statement of practice nor any other section of the expert report refers to post operative hospital care. Accordingly,

the trial court decision to exclude the expert's newly introduced theory was proper.

¶ 15 Appellant next claims that she should have been permitted to amend her complaint to include the new material. She refers us to *Reynolds v. Thomas Jefferson University Hospital*, 450 Pa.Super. 327, 676 A.2d 1205, 1211, *appeal denied*, 549 Pa. 703, 700 A.2d 442 (1996), for the proposition that

[g]eneral allegations of a pleading, which are not objected to because of their generality, may have the effect of extending the available scope of a party's proof, such that the proof would not constitute a variance, beyond that which a party might have been permitted to give under a more specific statement.

*Id.* at 1209–10 (citing Standard Pennsylvania Practice 2d, §§ 33:1, 33:6, 33:8 (1994)).

¶ 16 The provision of the Amended Complaint which Appellant would have us find presages an allegation of deficient post operative care alleges Appellee to have been negligent

[i]n failing to properly diagnose and treat the abdominal infection of Pati Ann Sweikert following the January 10, 1999 surgical procedure and continuing thereafter.

(Plaintiff's Amended Complaint at 14–15). We are not persuaded that Appellant's eleventh-hour construction of this very vague language to constitute the instant claim is a mere amplification of an allegation in her complaint. *See Reynolds, supra* at 1212 (citation omitted). Rather, the additional theory proposes another basis for recovery altogether, positing negligence committed by different tortfeasors during a different time frame. Moreover, there is no indication that Appellant suffered an infection secondary to the surgery; her admission to the hospital was necessitated by a gallstone embedded in

the neck of her gallbladder, infection amounting to gangrene in both her pancreas and gall bladder, and extensive sepsis. (Trial Deposition of Eric Munoz, M.D,, 7/6/04, at 75–78). Indeed, her expert's report states that after the January 12 procedure and the insertion of irrigation catheters, "her sepsis improved. She was eventually weaned from the respirator and extubated." (Report of Dr. Munoz, *supra* at 3). Further, as the trial court accurately points out, this paragraph could only refer to a sponge left during surgery,[3] the subject of the preceding six subparagraphs of the complaint.[4]

¶ 17 The *Reynolds* Court examined the holding of our Supreme Court in *Connor v. Allegheny General Hospital*, 501 Pa. 306, 461 A.2d 600 (1983), that a complaint may be amended after the statute of limitations has run in order to specify other forms of a defendant's negligence where the plaintiff does not seek to add new allegations of different negligent acts. The idea of pleadings is actually to convey notice of the intended grounds for suit, not require the opponent to guess at their substance. *See Rachlin v. Edmison*, 813 A.2d 862, 870 (Pa.Super.2002) (*en banc*). Because no disclosure was made prior to July 6, one week prior to trial, neither Appellee nor his expert had knowledge of the new theory until that time. And, despite Appellant's claim that a week is adequate to permit construction of a reasonable defense, we do not agree. Even the most generous reading of the Rule permitting liberal allowance of amendment would not countenance the introduction of a new theory sought so late by Appellant. Here, too, the trial court's decision to deny Appellant's motion to amend was correct.

¶ 18 Finally, relying on *Young v. Washington Hospital*, 761 A.2d 559 (Pa.Super.2000), *appeal denied*, 566 Pa. 668, 782 A.2d 548 (2001), Appellant argues that the trial court erred in overruling her objection to remarks made by defense counsel during closing argument. In *Young*, we reversed and remanded for a new trial because defense counsel strongly intimated during his opening statements that the motives of the appellants, parents of a child seriously damaged during birth, in commencing the legal action were entirely mercenary, and directed toward their own financial gain rather than the welfare of the child. We found these remarks not only highly prejudicial, but also misleading because it ignored Pa.R.C.P. 2039. That Rule requires damage awards to minors to be held in trust until the child's majority, so that the proceeds are not immediately accessible to the parents.

¶ 19 Here, we find nothing remotely analogous to counsel's comments in *Young*. In his closing, counsel analogized Appellee's care of Appellant to a firefighter who rescues a woman from a burning building and is sued for having damaged a door in the process. Appellant presented at Appellee's emergency room suffering from, *inter alia*, acute necrotizing pancreatitis, a life threatening condition in which the body's tissues devour themselves. The tri-

---

3. In fact, the identification of surgery as the point at which the sponge was introduced is problematic as records from the operating room indicate an accurate sponge count at the conclusion of each procedure. Moreover, surgical sponges contain a radiopaque marker, not present in dressing sponges, which blocks radiation, permitting them to appear on x-rays. None of the numerous studies performed indicated the presence of a foreign body at the surgical site.

4. Whether the indefinite identification by the expert of by whom and at what point the sponge was introduced meets the requisite standard of certainty is not before us. *See Corrado v. Thomas Jefferson University Hospital*, 790 A.2d 1022, 1031 (Pa.Super.2001).

al court observed that "[a]ll witnesses, including [Appellant's] expert agreed that the surgical procedures performed by Dr. Montgomery and [Appellee] Hospital saved [Appellant's] life. The analogy, therefore, had a reasonable relationship to the case at hand and was not improper." (Trial Ct. Op. at 9). We see no reason to disagree.

¶ 20 Judgment affirmed.