## Leyva v. International Surface Preparation Corp.

C.P. of Philadelphia County, September Term 2003, no. 4265.

*Robert P. Brand,* for plaintiff.

*John J. Hartzell* and *Barbara S. Magen,* for defendant.

DiNUBILE, *J.,* March 31, 2006—This opinion arises from the partial grant of the defendant's post-trial motions in which the jury's verdict has been remitted or, at the option of the plaintiff, a new trial has been ordered on damages in this products liability case because the verdict of $20,000,000 was excessive. The jury's award has been remitted to the sum of $3,750,000, an amount that the trial court concludes is the highest possible and reasonable award a jury could render under the circumstances of this case. Delay damages in the amount of $271,104 are added to the remittitur. In the event that the plaintiff accepts the remittitur, then judgment is entered in favor of plaintiff and against defendant in the amount of $4,021,104. If not, a new trial is granted as to damages. Defendant's post-trial motions as to liability have been denied.

Suit was brought by the plaintiff against the manufacturer of a tumblast machine for injuries sustained arising from its use. Plaintiff, who had been employed with Cardone Industries for five years, was injured while operating this tumblast machine on November 29, 2001 at one of the company's Philadelphia plants. Cardone Industries is engaged in, among other things, the remanufacture of auto parts. A tumblast machine is used to clean rust, dirt and other debris from auto parts. These materials are placed into a basket or dumpster, which constitute the loader part of the machine, by a fork lift operator. The operator of the machine, by means of a control panel, operates the dumpster. By pressing the button on

the panel, the loader lifts the material and deposits it in the machine. The operator can stop the dumping device at any time by merely depressing the button. After the material is deposited in the machine, the cleansing process begins by the injection of a detergent-like substance. The cleaning takes place while the deposited material is spun with the detergent. When the cleaning cycle is completed, the finished objects are removed from the machine. The control panel on this particular machine was located next to the dumpster in the path of the forklift. The accident occurred while the plaintiff was operating the machine with her right hand on the control panel, which in turn was moving the dumpster. As she was engaged in this procedure, a fellow employee operating the fork lift crushed her right arm against the panel with the fork lift.

Although the defendant seeking judgment n.o.v. in post-trial motions argues that there was insufficient evidence to prove defect, this position is clearly erroneous. The plaintiff presented an engineering and safety expert, Craig D. Clauser, who opined the machine was defective in two respects. See N.T., 12/13/05 at 64. Primarily, it lacked a barrier or guard between the control panel and the area where the fork lift operated to dump the material into the machine. If such a barrier were in place, he reasoned, the accident would not have occurred. As to the utility of constructing a barrier, evidence was presented that Cardone Industries had readily erected barriers on similar machines used in the plant in question. Mr. Clauser also stated that the control panel could have been moved to the front of the machine away from the dumpster,

or loader, and out of the path of the fork lift. It is clear that this testimony was sufficient for the jury to conclude that the tumblast machine was in fact defective. The jury had every right to conclude that either the machine lacked this barrier element and/or the panel was misplaced, making it unsafe for its intended user, namely, the plaintiff operator.

Defendant next argues that the accident did not arise out of the intended use of the machine; consequently, the tumblast was not defective and judgment n.o.v. should be granted. The defense maintains that there was no evidence as to how the forklift, which struck plaintiff, was linked to the intended use of the machine. To the contrary, there was more than sufficient evidence presented for the jury to conclude that the accident occurred while plaintiff was operating the machine with her right hand on the control panel, which was in turn moving the dumpster. As she was engaged in this procedure, a fellow employee operating the forklift crushed her right arm against the panel with the forklift. The jury also had a right to conclude that this unfortunate event would not have happened if the machine had contained a guard. Defendant's assertion that since plaintiff was struck by the forklift, it had nothing to do with the operation of the tumblast machine is erroneous. The issue as to causation was clearly for the jury. See *Clark v. Bil-Jax Inc.,* 763 A.2d 920 (Pa. Super. 2000), *appeal denied,* 566 Pa. 656, 782 A.2d 541 (2001). See court's charge, N.T., 12/15/05 at 7-9 and 47-49.

Defendant argued before the jury that the cause of the accident was the operation of the forklift, not the defect of the machine. Counsel now makes the argument be-

fore this court, that as a matter of law, causation has not been proven. On the contrary, the issue of causation clearly was one for the jury, which was resolved against the defendant. See *Jara v. Rexworks Inc.,* 718 A.2d 788 (Pa. Super. 1998), *appeal denied,* 558 Pa. 620, 737 A.2d 743 (1999); *Clark v. Bil-Jax Inc., supra.*

The defense also seeks a new trial because of two separate statements made by plaintiff's counsel in his closing. At one point in his argument to the jury, he asked why the defendant did not sue plaintiff's employer, Cardone Industries. See N.T., 12/15/05 at 20-21. Defense counsel immediately objected and his objection was sustained. In addition, the court gave curative instructions to the jury to disregard that argument and to not use it as a factor in their determination of the case. See N.T., 12/15/05 at 21-22.

The defense also maintains that in another part of his closing, plaintiff's counsel spoke about sending a message. *Id.* Plaintiff's counsel finished his closing by stating that the jury should send a message to defendant by rendering a verdict in favor of plaintiff. *Id.* At side-bar, after plaintiff's counsel finished his argument, defense counsel made a motion for mistrial, which was denied. The court stated to counsel that the elements of damages would be laid out to the jury in the charge. See N.T. 12/15/05 at 23-24. In fact, the court did as it promised. See N.T., 12/15/05 at 50-51. In its charge, the jury was admonished that damages must be fair and reasonable, not punitive, and limited to $86,000 in medical bills/past lost wages, and $7,500 for a future operation to correct the scar. *Id.*

The cases cited by the defense in their brief, such as *Young v. Washington Hospital,* 761 A.2d 559 (Pa. Super. 2000) and *Siegal v. Stefanyszyn,* 718 A.2d 1274 (Pa. Super. 1998), *appeal denied,* 559 Pa. 693, 739 A.2d 1059 (1999), involve situations much more egregious than what occurred here. In *Young,* counsel made improper inferences that the parents of the injured child plaintiff had brought the action for financial gain. In addition, the trial judge improperly allowed evidence of the parents' alleged contributory negligence into evidence. In *Siegal,* the appellate court termed counsel's argument "outrageous." See *Siegal,* 718 A.2d at 1276. Defense counsel in that case argued why the plaintiffs did not call the operating surgeon to prove their malpractice claim. Counsel knew that the operating physician had expressed the opinion that malpractice was committed but had been precluded from testifying as to this fact by the trial judge. In the instant case, the court promptly gave curative instructions to counsel's reference as to why the employer was not sued. See *Mount Olivet Tabernacle Church v. Wiegand Division,* 781 A.2d 1263, 1275 (Pa. Super. 2001), *affirmed per curium,* 571 Pa. 60, 811 A.2d 565 (2002). As to the "send a message" part of plaintiff counsel's speech, the court adequately covered this aspect in its general charge on damages.

The defendant maintains that these statements collectively, made by plaintiff's counsel, lead to the excessive verdict of $20,000,000. Therefore, the defense argues, a new trial should be granted not only as to damages, but to liability as well. It is asserted that the conduct of plaintiff's attorney in his closing was so egregious that it prejudiced the jury in its determination of both liability

and damages. Sanctions against counsel are also sought. This court respectfully disagrees. Taking his speech as a whole, in connection with the trial court's admonition and instructions, it was neither inflammatory nor prejudicial and does not warrant a new trial. Consequently, the court affirms the jury's finding as to the liability aspect of the trial and denies defendant's motion for sanctions arising from plaintiff's closing to the jury.

After weighing and considering the evidence presented, however, the court is constrained to either remit the award or grant a new trial on damages, at plaintiff's option, because the verdict of $20,000,000 for the damages the plaintiff sustained was excessive and not supported by the record. See *Doe v. Raezer,* 444 Pa. Super. 334, 340, 664 A.2d 102, 105 (1995), *appeal denied,* 544 Pa. 630, 675 A.2d 1248 (1996). As described by plaintiff's treating physician and orthopedic surgeon, James S. Raphael M.D., in his videotaped deposition, plaintiff suffered an acute compartment syndrome of her right hand and forearm. This syndrome arose from a profound crush injury to the dorsal and volar compartments of the forearm as well as her carpal tunnel. As a result of the crush injury, the muscle in her forearm was pulled out, or avulsed. Shortly after the accident, she was taken to the emergency room at Albert Einstein Medical Center. Dr. Raphael, who was the head of hand surgery at Einstein, performed a carpal tunnel release to decompress the pressure in the arm and debrided the wound of all non-viable tissue, including muscle. This procedure is called a fasciotomy. On December 3, 2001, Dr. Raphael performed further surgery to debride the dead or necrotic tissue of the skin and performed a skin graft, taking tis-

sue from plaintiff's right thigh. Plaintiff was discharged a little over a week after the incident on December 6, 2001. In March 2002, plaintiff underwent a Tenolysis (removal of scar) and Z-plasty scar revision surgery through an outpatient procedure to improve the function of her right wrist. In September of 2002, the plaintiff underwent a tendon transfer to improve her right thumb function, also performed on an outpatient basis. Dr. Raphael testified that by July of 2003, her wounds were healed. She does, however, suffer from residual scars on her right forearm and right thigh where skin was removed for the graft. The record also reflects that plaintiff, who is now 27 years of age, will suffer from limited range of motion in her fingers and reduced grip strength, which plaintiff maintained at trial would prevent her from sewing and playing basketball.

Remittitur is justified only under limited instances where the verdict is plainly excessive, exorbitant and beyond what the evidence warrants. *Smalls v. Pittsburgh-Corning Corp.,* 843 A.2d 410, 414 (Pa. Super. 2004). The criteria laid out in *Smalls,* when applied to the facts of this case, compel remittitur. The elements are: (1) weighing the severity of the injury; (2) whether the injury is demonstrated by objective physical or subjective evidence; (3) whether the injury is permanent; (4) plaintiff's ability to continue employment; (5) disparity between the amount of out-of-pocket expenses and the amount of the verdict; and (6) the amount of damages requested in plaintiff's complaint, citing *Stoughton v. Kinzey,* 299 Pa. Super. 499, 503, 445 A.2d 1240, 1242 (1982). It cannot be denied that the evidence presented in this case clearly demonstrates that plaintiff, at only 27

years of age, suffered significant injury, concomitant pain and suffering, permanent scarring, and limited range of motions of her fingers, particularly the thumb of her right hand. Nonetheless, the award of $20,000,000 was excessive and exorbitant when viewed in light of the latter three factors annunciated in *Smalls,* namely, plaintiff's ability to continue employment, disparity between the amount of the verdict and out-of-pocket expenses, and the damages plaintiff requested in the court records. The plaintiff has the ability to continue employment; no claim was asserted for future loss of earning capacity. Although plaintiff testified that she believed she is limited to light work only, Dr. Raphael had cleared her to return to her employer by January 2003, where she would be limited to lifting up to no more than 20 pounds. She has not done so, however, because she maintains that she is afraid. There is no objective evidence on this record, however, that Mrs. Leyva is unable to return to full employment and cannot operate the tumblast or other like-machines. Plaintiff's vague assertion that her earnings may be adversely impacted is belied by the record in that plaintiff made no claim for future loss of earning capacity.

The disparity between out-of-pocket expenses and the amount of the verdict was immense. The special damages presented to the jury were merely for past loss of wages and medical bills, which totaled $86,000 (the extent of the workers' compensation lien). The only assertion for future medical expenses arose from Dr. Raphael's opinion that the plaintiff would have to undergo a future scar revision surgery at a cost of approximately $7,500. The court specifically charged the jury that they were limited as far as out-of-pocket expenses to the $86,000

award for past loss of earnings/medical bills and $7,500 for the future operation. The award for pain and suffering in relation to these special damages was enormous and bore no reasonable relationship to the injuries suffered. It is not disputed that Mrs. Leyva sustained significant injury to her arm, resulting in limited use of her thumb and fingers, so that she cannot do the sewing she wishes; but the injury did not render her arm useless or paralyzed. She is still able to operate the machine and return to work. It is also beyond doubt that she suffered pain from the accident and through subsequent physical therapies. The record is bare, however, as to whether she still suffers any pain after July 2003 when Dr. Raphael testified that she had fully recovered from her injuries. Finally, it appears that the plaintiff's highest demand was one million dollars. In light of these facts and in the exercise of its sound discretion, the court finds the verdict excessive and is constrained to remit the award or, in the alternative at plaintiff's option, grant a new trial as to the damage issue. See *Doe v. Raezer, supra; Smalls v. Pittsburgh-Corning, supra; Gunn v. Grossman,* 748 A.2d 1235, 1241 (Pa. Super. 2000); *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 165, 611 A.2d 1174, 1176 (1992). See also, *Potochnick v. Perry,* 861 A.2d 277, 285 (Pa. Super. 2004) (remittitur denied for verdict of $5,000,000 for plaintiff and $1,000,000 for his wife, for loss of consortium, in severe brain damage and loss of future earnings case).

The court, in its order, has given plaintiff the right to accept the remitted sum of $3,750,000 (plus delay damages calculated on the remitted sum) or be granted a new trial on damages. After review of the evidence of dam-

ages presented in this case, it is concluded that $3,750,000 is the highest reasonable compensation that a jury could award. Although not applicable to this case, the court used the criteria laid out for remittitur in Pa.R.C.P. 1042.72 under the MCARE Act. See 13 P.S. §1303.509(a) (pertaining to malpractice cases as a guide in arriving at this amount). It must be borne in mind that the court has not substituted its judgment for that of the jury. The plaintiff is given the absolute right to reject the remittitur, accept the grant of new trial on damages or, in the alternative, appeal the ruling of a new trial.

Consequently, defendant's post-trial motions as to liability are denied, but the verdict is remitted to $3,750,000, plus delay damages in the amount of $271,104,[1] or, in the alternative, grants a new trial as to damages if plaintiff declines to accept the sum as remitted.

---

1. The delay damage calculation was based on the time periods and interest contained in plaintiff's amended petition for delay damages. The time period for the commencement of delay damages was October 1, 2004, one year after service of the writ of summons. Defendant argued in its reply petition that the starting date should have been April 1, 2005; one year after plaintiff's amended complaint was filed. The court disagrees. Pa.R.C.P. 238(a)(2) clearly provides that the time period begins to run from one year of the date the original process was served. Defendant also maintains that plaintiff's counsel requested a continuance due to a vacation when the case was called for trial in October 2005. Consequently, defendant maintains that the calculations should have ended on October 1, 2005 instead of the date of the verdict on December 15, 2005. Since the docket entries showed no trial listing of this case in October 2005, delay damages were computed to the verdict date as maintained in plaintiff's petition.

## ORDER

And now, March 31, 2006, the post-trial motions of the defendant are granted in part and denied in part. Defendant's post-trial motion pertaining to liability is denied. Defendant's post-trial motion to remit damages is granted with the option by the plaintiff to either accept remittitur or be given a new trial. The jury's verdict of $20,000,000 is remitted to the sum of $3,750,000 because the damage award was excessive. The verdict is remitted to $3,750,000, an amount equal to what could constitute reasonable compensation for the injuries suffered by the plaintiff under the particular factual circumstances of this case. Delay damages are calculated on this sum in the amount of $271,104.

If the plaintiff declines to accept the award as remitted, then a new trial is ordered, limited to damages only. If the remittitur is accepted by plaintiff, then judgment is entered in the sum of $4,021,104 (including delay damages) in favor of plaintiff, Guillermina Leyva, and against defendant, International Surface Preparation Corp. d/b/a Wheelabrator Corp.