J. A21032/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CRAIG STELTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILLIAM C. MEYERS, M.D.; | : | |
| VINCERA CORE INSTITUTE AND | : | |
| VINCERA INSTITUTE, | : | No. 179 EDA 2019 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered December 12, 2018,
in the Court of Common Pleas of Philadelphia County
Civil Division at No. March Term 2016-01720

BEFORE:  BOWES, J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED APRIL 14, 2020**

William C. Meyers, M.D., Vincera Core Institute, and Vincera Institute (collectively, "appellants") appeal from the December 12, 2018 order entered in the Court of Common Pleas of Philadelphia County granting Craig Steltz a new trial.[1]  We affirm.

The trial court set forth the factual and procedural history as follows:

> [Steltz] sued [appellants] for Professional Negligence relating to after care following surgery on [Steltz] to treat athletic pubalgia, a medical condition commonly known as "sports hernia."  At the time of the events at issue[, Steltz] played professional football as a defensive back on special teams for the Chicago Bears of the National Football League.  [Steltz] alleges that [appellants] negligently failed to disclose the

---

[1] This order granting a new trial is an interlocutory order but is immediately appealable as of right.  **See** Pa.R.A.P. 311(a)(6).

existence of a tear in his adductor longus muscle in his right leg. [Steltz] returned to playing for the Bears, but contended that the undiagnosed injury impeded his ability to cut sideways on the field and compromised his performance. [Steltz] was subsequently cut from the Bears and not hired by any other NFL team.

The [trial court] presided over a jury trial in this matter from July 31, 2018 to August 14, 2018. During the trial, [appellants] presented Adam Zoga, M.D., as an expert witness in the field of musculoskeletal radiology.[Footnote 1] After Dr. Zoga estimated that there are approximately 5,000 musculoskeletal radiologists in the United States, [appellants'] counsel asked Dr. Zoga the following question:

> Five thousand. Five thousand of those radiologists and [Steltz] couldn't find one of them to come into this courtroom to support Dr. Read[2], did you know that?

N.T. (Trial) 08/07/2018, [morning] session at p. 48, lines 21-24.

> [Footnote 1] [Appellants] also called Dr. Zoga to testify as a fact witness.

[Steltz] objected and orally moved for a mistrial after the jury was excused. [The trial court] denied [Steltz's] motion for a mistrial. After a lunch recess, [the trial court] issued a cautionary instruction to the jury that questions by counsel are not facts to be considered as evidence. The jury ultimately returned a verdict for [appellants].

[Steltz] filed a timely Motion for Post Trial Relief on August 22, 2018[,] seeking a new trial. In that

---

[2] We note that Dr. Paul Read was a musculoskeletal radiologist who reviewed Steltz's June 30, 2014 MRI at appellants' request and prepared a report for Dr. Meyers concluding, among other things, that Steltz sustained a complete tear of his adductor muscle. (Notes of testimony, 7/31/18 morning session, at 46-67.) Dr. Read was proffered as a fact witness by Steltz. (*Id.*)

motion, [Steltz] argued that [the trial court] erred in denying [Steltz's] motion for a mistrial because the effect of [appellants'] counsel's question was so prejudicial that no instruction could have cured it. Upon further review of the record and applicable law, [the trial court was] compelled to agree with [Steltz] and entered an order granting a new trial on December 12, 2018.

[Appellants] filed on January 7, 2019[,] a timely notice of appeal of [the trial court] order granting a new trial.

Trial court opinion, 3/4/19 at 1-3 (footnote 2 omitted). The trial court directed appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellants timely complied. The trial court subsequently filed its Rule 1925(a) opinion on March 4, 2019.

Appellants raise the following issue for our review:

Whether the trial court erred in granting a new trial based upon a single unanswered question in the 1,400-page trial transcript where the question did not raise an improper subject and it certainly was not so prejudicial that it justified overturning a ten-day jury trial?

Appellants' brief at 4 (unnecessary capitalization omitted).

Each review of a challenge to a new trial order must begin with an analysis of the underlying conduct or omission by the trial court that formed the basis for the motion. There is a two-step process that a trial court must follow when responding to a request for new trial. First, the trial court must decide whether one or more mistakes occurred at trial. These mistakes might involve factual, legal, or discretionary matters. Second, if the trial court concludes that a mistake (or mistakes) occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. The harmless error doctrine

underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the [appellate] court will scrutinize for legal error.

If the appellate court agrees with the determination of the trial court that a mistake occurred, it proceeds to the second level of analysis. The appellate court must then determine whether the trial court abused its discretion in ruling on the request for a new trial. Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the [trial] court did not abuse its discretion.

*Ferguson v. Morton*, 84 A.3d 715, 719-720 (Pa.Super. 2013) (citations and quotation marks omitted), *appeal denied*, 97 A.3d 745 (Pa. 2014).

We begin our analysis by first examining the trial court's determination that a mistake occurred during the trial. Instantly, the trial court identified

the single mistake as its denial of Steltz's motion for a mistrial after appellants'

counsel asked what the trial court found to be an improper question during

the direct examination of appellants' expert witness. (Trial court opinion,

12/14/18 at 5-12.)

> Whether remarks by counsel warrant a new trial requires a determination based upon an assessment of the circumstances under which the statements were made and the precaution taken by the [trial] court and counsel to prevent such remarks from having a prejudicial effect. It is the duty of the trial judge to take affirmative steps to attempt to cure harm, once an offensive remark has been objected to. However, there are certain instances where the comments of counsel are so offensive or egregious that no curative instruction can adequately obliterate the taint.

**Siegal v. Stefanyszyn**, 718 A.2d 1274, 1277 (Pa.Super. 1998) (citation

omitted), **appeal denied**, 739 A.2d 1059 (Pa. 1999). "If counsel's

misconduct contributed to the verdict, it will be deemed prejudicial and a new

trial will be required." **Poust v. Hylton**, 940 A.2d 380, 385 (Pa.Super. 2007)

(citation and brackets omitted), **appeal denied**, 959 A.2d 320 (Pa. 2008).

"It is well established that any statements by counsel, not based on evidence,

which tend to influence the jury in resolving the issues before them solely by

an appeal to passion and prejudice is improper and will not be countenanced."

**Young v. Washington Hosp.**, 761 A.2d 559, 563 (Pa.Super. 2000), citing

**Narciso v. Mauch Chunk Twp.**, 87 A.2d 233, 234 (Pa. 1952), **appeal**

**denied**, 782 A.2d 548 (Pa. 2001). "It is improper for counsel to present facts

to the jury which are not in evidence and which are prejudicial to the opposing

party; **counsel may not comment on evidence to the effect that it removes an issue of credibility from the jury**." *Young*, 761 A.2d at 561 (citation omitted; emphasis added).

Here, during the direct examination of appellants' own expert witness in musculoskeletal radiology, Dr. Zoga, the following dialogue occurred:

> [Appellants' counsel:] [H]ow many musculoskeletal radiologists do you think there are in this country[,] ballpark?
>
> [Dr. Zoga:] So if the definition is radiologists who interpret musculoskeletal imaging, it has to be five thousand.
>
> [Appellants' counsel:] Five thousand. Five thousand of those radiologists and [Steltz] **couldn't find** one of them to come into this courtroom to support Dr. Read, did you know that?
>
> [Steltz's counsel:] Your Honor --
>
> [Appellants' counsel:] Not one, **couldn't find** one?
>
> [Steltz's counsel:] Your Honor, I object and I make a motion.
>
> [The trial court:] Sustained. Motion?
>
> [Steltz's counsel:] Right now. You know that's improper.
>
> [The trial court:] That's why I sustained the objection.

Notes of testimony, 8/7/18 morning session at 48-49 (emphasis added). After the jury was removed from the courtroom, Steltz motioned for a mistrial, arguing that counsel's comment was so prejudicial and improper that a jury

instruction could not cure the harm. (*Id.* at 50.) The trial court denied the motion for a mistrial, (*id.* at 52), and provided the following curative instruction to the jury[3]:

> When we were last here, there was an exchange between the counsel and I just wanted to state, as I stated at the beginning of the trial, that the statements and arguments made by counsel do not constitute evidence. They are not the facts. Evidence includes any testimony of witnesses, documents, and other exhibits submitted during the trial constitute [sic] facts and I just ask that you understand that particular principle, as you evaluate the evidence, okay.
>
> So the parties or counsel have agreed to proceed in a civil fashion. So we'll continue. Thank you.

Notes of testimony, 8/7/18 afternoon session at 4-5. In addition to the curative instruction, the trial court charged the jury as follows: "Evidence is not what the lawyers say. The lawyers are not witnesses. Their opening statements, arguments, questions, comments and closing arguments are not evidence." (Notes of testimony, 8/13/18 at 13.) The jury returned a verdict in favor of appellants.

The trial court, after being presented with Steltz's post-trial motion, granted a new trial concluding that it had erred in denying Steltz's motion for

---

[3] We note that after appellants' counsel's question and Steltz's counsel's objection, the jury was removed from the courtroom, counsel presented argument, and the jury was returned to the courtroom in order to recess for lunch. (Notes of testimony, 8/7/18 morning session at 49-56.) It was after the jury's return from lunch that the trial court provided the curative instruction. (Notes of testimony, 8/7/18 afternoon session at 4-5.)

a mistrial. (Trial court opinion, 12/14/18 at 5-14.) The trial court, in finding that counsel's leading question "[f]ive thousand of those radiologists and [Steltz] couldn't find one of them to come into this courtroom to support Dr. Read, did you know that?" was "improper at its core" and that it was a mistake to deny Steltz's motion for a mistrial, stated,

> [appellants'] counsel had to know he was implying something that was not really true and practically unverifiable with his question to Dr. Zoga and it was staged perfectly. The odds were good that any such "question" to Dr. Zoga would be objected to and addressed by the [trial] court in dramatic fashion, thus reinforcing [appellants'] message in the minds of the jurors.

*Id.* at 12. The trial court concluded "[t]here was no curative instruction [the trial c]ourt could have delivered to the jury to fix the harm caused by [appellants'] counsel's egregious statement that not one musculoskeletal radiologist among the 5,000 who practice in the United States could be found to support [Dr. Read's] reading of the MRI." (***Id.*** at 6-7.) The trial court explained:

> There was no purpose to [appellants'] questions to Dr. Zoga but to prejudice the jury. First, [appellants] knew for a fact that it would be impossible and wholly improper for Dr. Zoga to answer this leading question in his capacity as an expert witness; it is obvious Dr. Zoga is not privy to, and would have no knowledge of, [Steltz's] trial preparations. Second, [appellants] were on notice that [Steltz] had retained [Jaime] Checkoff, M.D. as a musculoskeletal radiology expert because he was listed as a potential expert witness in [Steltz's] pre-trial memorandum dated February 15, 2018 and a copy of his report was appended to the same.[Footnote 3] [Steltz's] counsel also mentioned

that he intended to call as a witness "a radiologist from California who is a consultant to the [San Francisco] 49ers" in his opening statement[], although [Steltz] ended up not calling this witness. Third, the question was a roundabout way to use Dr. Zoga as a prop for counsel to opine on the credibility of [Steltz's] evidence, which neither counsel nor experts are permitted to do. Finally, it was inappropriate for [appellants'] counsel to question a witness about [Steltz's] trial strategy or failure to produce a witness.

[Footnote 3] The substance of Dr. Checkoff's report indicates that he had reviewed the same MRIs that Dr. Read had and he concurred with Dr. Read's conclusions.

*Id.* at 10-11 (citation to record omitted).

Appellants contend that the question would have been proper as a statement if made during closing arguments and, therefore, was proper as an "unanswered question" asked by counsel during direct examination of its fact and expert witness. (Appellants' brief at 25.) Appellants attempt to characterize the question as only "referencing what's occurred in this courtroom," by arguing that appellants' counsel "did not ask whether [Steltz] could find a radiology expert to support Dr. Read; he asked whether **Dr. Zoga was aware** that [Steltz] had not found such an expert **to come into this courtroom** to support Dr. Read." (*Id.* at 20 (record citations and original quotation marks omitted; emphasis in original).) Appellants assert it was undisputed that Steltz had rested his case without presenting any testimony

from a radiology expert to support Dr. Read and that the jury was aware a radiology expert had not been called to testify.[4] (*Id.* at 21.)

A review of the testimony, however, demonstrates that appellants' counsel used the words "couldn't find," (notes of testimony, 8/7/18 morning session at 48), which are quite different from saying Steltz **did not find** another radiologist who would agree with Dr. Read. Indeed, appellants' counsel's question suggesting to the jury that Steltz "couldn't find" such a radiologist is belied by the record. Dr. Read testified that the report he prepared for Dr. Meyers after reviewing Steltz's June 30, 2014 post-surgery MRI stated, "There is a complete tear of the common adductor origin with intramuscular hematoma and strain and 5 cm of tendon retraction, no inguinal hernia is identified by MRI."[5] (Notes of testimony, 7/31/18 morning session at 62.) Dr. Read explained that "[t]endons, in general, attach muscle to bone, so the adductor muscle is attached by the adductor tendon to a bone[,]" and that his use of the term "origin" meant the attachment site of the tendon to the bone. (*Id.* at 63.) In other words, Steltz's MRI revealed that after Steltz's surgery, he still had a tear in his abductor longus muscle.

---

[4] We note that Dr. Read was called as a fact witness and not as an expert witness in musculoskeletal radiology. (Notes of testimony, 7/31/18 morning session at 46-48.)

[5] We note that on cross-examination, Dr. Read acknowledged that in his prior deposition he stated he was uncomfortable with the term "tear" and preferred "discontinuity" because he was uncertain if the separation was the result of a traumatic event. (Notes of testimony, 7/31/18 afternoon session at 22-23.)

Dr. Read's report findings were, in fact, supported by Dr. Checkoff, who identified himself as a board certified radiologist and was listed as a potential expert witness in Steltz's pre-trial memorandum. (Steltz's pre-trial memorandum, 2/15/18 at 4.) Dr. Checkoff's findings, after reviewing Steltz's June 30, 2014 post-surgery MRI, included the existence of "a partial tear of the right adductor longus muscle, centered approximately 4 cm distal to the attachment on the pubic bone." (*Id.* at Exhibit A, "Jaime Checkoff, MD" letter.) Appellants' counsel, having received a copy of Steltz's pre-trial memorandum, was, therefore, put on notice that Steltz **did find** and planned to call as a potential witness another radiologist whose findings concurred with Dr. Read's findings that the June 30, 2014 post-surgery MRI revealed a tear in the abductor longus muscle, an allegation that formed the basis of Steltz's complaint. As such, when appellants' counsel stated that Steltz "couldn't find" verses "did not find" another radiologist who would agree with Dr. Read's findings, his comment was analogous to the statement made by counsel in *Siegal*, *supra*.

In *Siegal*, defense counsel, during his closing argument, asked the question "Do you think if [plaintiff's medical fact witness] really felt that [defendant doctor] had done something wrong that [plaintiff] would have let him walk out of this court room without saying so? The answer is no." *Siegal*, 718 A.2d at 1276. Counsel knew the statement to be untrue because the trial court had granted a motion to preclude plaintiff's medical fact witness from

testifying, as an expert witness, that defendant doctor's treatment fell below the applicable standard of care. *Id.* The ***Siegal*** court found counsel's statement to be "clearly improper, as it conveyed to the jury **something that counsel knew to be untrue**." *Id.* at 1277 (emphasis added) and n.4 (quoting *Demosthenes*, "What greater crime can an orator be charged with than that his opinions and his language are not the same?").

Upon review of the record, we discern no abuse of discretion on the part of the trial court in reaching the conclusion that appellants' counsel's statement was "improper at its core" and that it erred in denying Steltz's motion for a mistrial.

We now turn our attention to determining whether the trial court abused its discretion in granting a new trial after it determined that Steltz was prejudiced by the trial court's mistake.

Here, appellants argue that there was no prejudice as a result of the question because the trial court sustained the objection before the witness answered the question and then provided a curative instruction, which the jury is presumed to follow. (Appellants' brief at 30-31.) Appellants further contend that Steltz had the opportunity to address why he did not call a radiology expert in his closing argument. (*Id.* at 32.) Appellants argue, "this court has ruled that new trials are not required" "in cases involving far worse conduct by counsel[.]" (*Id.* at 32-33 (citations omitted).)

In determining that Steltz was prejudiced by the question, the trial court explained,

> The question had the potential to taint the jury's perceptions of the case by insinuating that no musculoskeletal radiologist out of 5,000 could be found to testify in support of [Steltz's witness's] reading of the MRI, which [appellants] had no right to present as a truth. Lastly[,] the question served as a mechanism to editorialize about the credibility of [Steltz's] evidence. It is one thing to ask an expert to consider a hypothetical set of facts that may or may not be true and offer his or her opinion about that hypothetical, which is generally permissible. In this case, however, the proceedings were tainted when [appellants] made a deliberately prejudicial statement in the guise of a question that was objectively impossible and improper for the expert to answer.

Trial court opinion, 12/14/18 at 12-13 (citations omitted).

> Having considered the actual substance of the question, the insinuation that lay behind it, and its potential for to [sic] fix unfair prejudice against [Steltz] in the minds of the jurors, we have no choice but to conclude that the question was so inflammatory and prejudicial so as to preclude a fair trial and to have undoubtedly influenced the jury, distracting the minds of the jurors from the pivotal issue and influencing their verdict. Therefore[,] because the unavoidable effect of the question was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict, we must grant [Steltz] a new trial.

*Id.* at 13 (citations, quotation marks, and original brackets omitted).

The record demonstrates that counsel knew his questions involving the words "couldn't find" were untrue and misleading when, in fact, Steltz did find a radiology expert, Dr. Checkoff, who agreed with Dr. Read's findings.

Counsel emphasized the point of his question by asking it not once but, over Steltz's counsel's objection, asking it a second time when he stated, "Not one, couldn't find one?" These questions were an attempt to remove the issue of whether Dr. Read's testimony was credible from the jury. *See Young*, 761 A.2d at 561. While counsel is generally free to present his or her case in the light most suited to advance the client's position, counsel is not free to take liberties with the evidence and misconstrue it for the jury. *See Ferguson*, 84 A.3d at 723. Moreover, the curative instructions only generally informed the jury that counsel's statements and arguments were not evidence, and did not address the specific questions by appellants' counsel and the fact that Steltz not only could have found but did find a radiology expert who concurred with Dr. Read's findings. *See Siegal*, 718 A.2d at 1277 (finding curative instruction insufficient to cure harm when instruction did not convey to jury what was true).

Upon a review of the record, we find that the record supports the trial court's reasons and factual basis for its decision, and we discern no abuse of discretion on the part of the trial court in granting Steltz a new trial.

Order affirmed.


Olson, J. joins this Memorandum.

Bowes, J. files a Dissenting Memorandum.

J. A21032/19

Judgment Entered.

JosephD.Seletyn,Esq.
Prothonotary

Date: 4/14/20